Argued at Pendleton, October 31, 1923, reversed and remanded
    January 14, argued on rehearing at Pendleton, May 6, former
    decision set aside and judgment affirmed July 22, 1924.

# HOMER I. WATTS v. GEORGE GERKING, ALF OFTEDAHL, R. I. KEATOR, MRS. CHARLES BETTS AND N. H. DESPER.

(222 Pac. 318; 228 Pac. 135.)

**Pleading—Judicial Notice not Taken That Defendant is District Attorney on Demurrer to Complaint.**

1. Where complaint for malicious prosecution did not allege that
defendant was district attorney or whether he was acting in his in-
dividual or in his official capacity, and the acts could have been
committed in either capacity, the court, in passing on the sufficiency
of the complaint on demurrer, should not have considered the fact
that the defendant was district attorney, even if under Sections
728, 729, Or. L., it could take judicial notice of such fact on the
trial.

**District and Prosecuting Attorneys—Status of District Attorney Stated.**

2. A district attorney is both a law officer and, in common with
all attorneys, an officer of the court, but he is not a judicial officer,
nor a part of the court.

**Malicious Prosecution—District Attorney Liable.**

3. Under Constitution, Article VII, Section 17, and Sections 1016,
1018, Or. L., making it the duty of a district attorney to "institute
proceedings before the magistrate for the arrest of persons charged
with or reasonably suspected of public offenses when he has in-
formation that any such offenses have been committed," a district
attorney is liable in an action for malicious prosecution for institut-
ing proceedings against a person for a crime which he knows has
not been committed.

**Pleading—Demurrer Admits Proof of Material Facts Pleaded.**

4. A demurrer admits the truth of material facts pleaded.

## ON REHEARING.

**Malicious Prosecution—Action not Favored.**

5. Action for malicious prosecution is not favored, presumption
being that every prosecution for crime is founded on probable cause,
and instituted only for purposes of justice.

---

3. Liability of public prosecutor to action for malicious prosecu-
tion, see note in L. R. A. 1917F, 670.

See 15 C. J., § 169; 18 C. J., §§ 1, 34, 42 (1926 Anno.), 46; 33
C. J., §§ 196, 252; 26 Cyc., pp. 7, 24, 67, 85; 31 Cyc., p. 333; 36 Cyc.,
pp. 1147, 1148; 40 Cyc., p. 194.

District and Prosecuting Attorneys—District Attorney not Required to Prosecute Action for Violation of Prohibition Law on Perjured Affidavit.

6. District attorney, in determining whether to institute prosecution, is *quasi*-judicial officer possessing certain discretion, under Section 1018, Or. L., as to when, how and against whom to proceed, and hence is not required by Prohibition Law (§ 2224—55, Or. L.) to prosecute criminal action for unlawful possession of intoxicating liquors, to avoid penalties prescribed by Section 2224—44, where he knows that affidavit is perjured.

Statutes—All Acts Concerning Same Subject Read Together.

7. In construing statute, all acts relating to same subject should be read in connection with it as one law.

District and Prosecuting Attorneys—Law Defining District Attorney's Duties not Repealed by Act Requiring Him to Prosecute for Violation of Prohibition Law.

8. Prohibition Law (§ 2224—55, Or. L.), requiring district attorney to prosecute for unlawful possession of intoxicating liquors, did not directly or impliedly repeal Section 1018, Or. L., defining his duties, in view of Sections 2224—50, 2224—51, 2224—52, 2224—54; filing of verified complaint by him depending on existence of reasonable ground to believe that offense charged has been committed.

Malicious Prosecution—Prosecution Based on Probable Cause.

9. Every prosecution for crime should be based on probable cause.

Malicious Prosecution—Probable Cause Depends on Belief.

10. Probable cause for prosecution depends, not on actual state of case, but on honest and reasonable belief of party commencing prosecution.

District and Prosecuting Attorneys—Have Power of Attorney General at Common Law Within District.

11. In absence of statutory regulations, prosecuting attorney, in his district, has power of Attorney General at common law.

Courts—Jurisdiction Depends on Allegations, not Facts.

12. Jurisdiction depends on allegations, not facts.

Pleading—Well-pleaded Allegations of Complaint Considered Accepted as True on Demurrer.

13. All well-pleaded allegations of complaint must be accepted as true in considering demurrer.

Intoxicating Liquors—Mere Possession is Crime, With Certain Exceptions not Necessary to Plead.

14. Under state "bone dry" law, mere possession of intoxicating liquor, with certain exceptions which need not be pleaded, is crime.

Malicious Prosecution—District Attorney Held not Liable.

15. Criminal statutes against subornation of perjury being applicable to district attorney as to any other person, he is not subject to action for malicious prosecution on perjured affidavits for possession of intoxicating liquor purchased prior to January 1, 1916.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

REVERSED AND REMANDED.

For appellant there was a brief and oral arguments by *Mr. Homer I. Watts, in pro. per.,* and *Mr. E. C. Prestbye.*

For respondent there was a brief over the names of *Mr. C. Z. Randall* and *Messrs. Fee & Fee,* with oral arguments by *Mr. Randall* and *Mr. James S. Fee, Jr.*

RAND, J.—This is an action against five defendants for malicious prosecution in instituting criminal proceedings against the plaintiff, causing him to be arrested, his home to be searched, and property in his possession to be taken from him, maliciously and without probable cause, upon a charge which, it is alleged, the defendants at the time knew to be false.

The plaintiff is a reputable attorney at law, regularly admitted to practice, and resided with his wife at his home at Athena, where he had in his possession a quantity of intoxicating liquor which the complaint alleges he had acquired prior to the enactment of the prohibition laws and, if thus acquired, the possession thereof was lawful under § 2224—4, Or. Laws. In effect the complaint charges that the defendants, knowing that the plaintiff's possession of such liquor was lawful, in order to injure and disgrace the plaintiff, entered into an unlawful agreement and conspiracy to charge him with being unlawfully in pos-

session of said liquor, and with maintaining a nuisance at his home by keeping the liquor there for the purpose of barter and sale. The complaint further alleges, in substance, that the defendants falsely, maliciously and without probable cause, and knowing that the charge was false, filed a criminal information in the Justice's Court and caused the plaintiff to be arrested, his home to be searched, the liquor lawfully in his possession to be taken, and a notice, stating that proceedings to confiscate the same had been instituted, to be posted and publicly displayed on his house, and attempted to suborn perjury against him upon the trial; that on the trial of such charge in the Justice's Court, the plaintiff was found to be not guilty, and that an appeal was taken by the defendants to the Circuit Court for Umatilla County, where, upon a trial had in that court, the plaintiff was again found to be not guilty and was discharged; that the action has been finally terminated in favor of the plaintiff, and that said proceedings were instituted by the defendants maliciously and without probable cause and with full knowledge upon the part of the defendants that the charge was wholly false.

The respondent herein, R. I. Keator, is the district attorney for Umatilla County. The Circuit Court sustained his separate demurrer to the complaint and, as to him, dismissed the action on the ground that the complaint did not state facts sufficient to constitute a cause of action against him. Although there was no allegation in the complaint that the defendant Keator, at the time of the commission of the acts complained of, was district attorney for Umatilla County, yet the court, taking judicial notice of that fact, held that he was not accountable to the plaintiff in an action for damages for acts done by him in his

official capacity, and upon that ground sustained the demurrer as to him and overruled a demurrer upon the same ground as to the other defendants.

1. While the Code, Sections 728, 729, Or. Laws, provides that certain facts shall be judicially noticed, and that evidence of those facts need not be produced, and while it has been said that "Where the law presumes a fact, the same need not be stated in the pleading. Thus matters of which the court takes judicial notice need not be alleged" (1 Estee's Pleadings (4 ed.), § 188), we doubt very much whether a court is authorized to construe a complaint as if it contained an allegation of an essential and material fact which has not been pleaded, although the fact is one which, on trial, the court might take judicial notice of and determine the sufficiency of such complaint upon a consideration of other facts than those alleged. The only case cited by Mr. Estee in support of his statement, that matters of which the court takes judicial notice need not be alleged, is the case of *Goelet* v. *Cowdrey,* 1 Duer (N. Y.), 132, 139, and in that case the question before the court was whether express reference to the statute by its title, or otherwise, was necessary in pleading the statute of frauds, and it was held that it was sufficient to set forth the facts which render the provisions of the statute applicable. Other cases in illustration of the rule stated by Mr. Estee are cited, but there is no analogy between those cases and the case made by the complaint here. Nor do the allegations of the complaint bring the case within the rule stated in *Peterson* v. *Standard Oil Co.,* 55 Or. 511, 518 (106 Pac. 337, Ann. Cas. 1912A, 625), where it was held that:

" * * Whatever quality in a substance is taken judicial notice of is, in effect, pleaded when the sub-

stance itself is mentioned, at least that such method of allegation, even if meager and defective, will be sufficient on general demurrer.''

Under these allegations, the acts charged against Keator could have been committed as well in his individual as in his official capacity, and for this reason, if for none other, the legal sufficiency of this complaint ought not to have been determined by consideration of a fact not alleged or in any way referred to, even though it might be that upon the trial proof of the fact, if alleged, might be unnecessary because the court might be authorized to take judicial notice of it. But as the plaintiff, upon the argument, conceded that in the commission of the acts charged in the complaint the defendant Keator was acting in his official capacity, and consented to a consideration of the complaint for the purposes of the demurrer as if it contained an allegation to that effect, and we are of the opinion that the demurrer ought to have been overruled, even if such fact had been alleged, we shall, as did the Circuit Court, consider the complaint as if it actually contained a specific allegation of that fact.

2. In the performance of an official duty a district attorney is both a law officer and, in common with all attorneys, an officer of the court; but he is not a judicial officer, nor is he a part of the court. In investigating the facts and determining whether criminal proceedings shall be instituted he acts in a *quasi*-judicial capacity. ''The same reasons of private interest and public policy which operate to render the judicial officer exempt from civil liability for his judicial acts within his jurisdiction apply equally as well to the *quasi*-judicial officer.'' (Newell on Malicious Prosecution, § 68.)

Judges of courts of limited and inferior jurisdiction are exempt from liability for their judicial acts, while acting within their jurisdiction and not otherwise; while a judge of a court of superior or general jurisdiction is not liable to a civil action for his judicial acts, even where such acts are in excess of his jurisdiction and are alleged to have been done maliciously or corruptly. But a judge of a court of superior or general jurisdiction is liable for his judicial acts, if done corruptly or maliciously, where there is a clear absence of all jurisdiction over the subject matter and the want of jurisdiction is known to the judge: *Bradley* v. *Fisher,* 13 Wall. 335, 351 (20 L. Ed. 646, see, also, Rose's U. S. Notes).

In *Griffith* v. *Slinkard,* 146 Ind. 117 (44 N. E. 1001), the court held that a prosecuting attorney is not liable in an action for malicious prosecution for participation by him in procuring an indictment maliciously and without probable cause. Based upon this decision the rule has been stated that:

"A prosecuting attorney, being a judicial officer of the state, is not liable in damages for acts done in the course of his duty, although willful, malicious, or libelous." 32 Cyc. 717; 18 C. J. 1318.

Following the rule announced in *Griffith* v. *Slinkard, supra,* it is held in *Smith* v. *Parman,* 101 Kan. 115 (165 Pac. 663, L. R. A. 1917F, 698), that a city attorney, while engaged in the prosecution of a person charged with the violation of an ordinance, is not liable in damages to the person injured, for instituting a prosecution under an ordinance, maliciously and without probable cause.

The case of *Parker* v. *Huntington,* 2 Gray (Mass.), 124, is relied upon as an authority sustaining the rule above stated, but an examination of the opinion in

that case will disclose that it does not announce any such doctrine. It happened in that case that one of the defendants in the action, which was an action for malicious prosecution, had acted in the capacity of district attorney in the prosecution of the plaintiff, but the right of the plaintiff to maintain the action was not denied upon that ground. His right to maintain the action was denied upon the sole ground that he had been convicted of the offense with which he had been charged, following which the judgment of conviction had been set aside and a *nolle prosequi* entered, and therefore he was not in a position to show "a sufficient and proper ending of the indictment against him, and a want of probable cause." This ruling was based upon former decisions of that court, where it was held that an action for malicious prosecution by indictment, upon a showing that the prosecution had been determined by a *nolle prosequi,* could not be maintained. The only inference to be drawn from the decision is that if the plaintiff had been in position to show a proper termination of the criminal action the action could have been maintained, notwithstanding that the defendant had acted in the criminal prosecution as district attorney.

In *Schneider* v. *Shepherd,* 192 Mich. 82 (158 N. W. 182, L. R. A. 1916F, 399), the prosecuting officer, who, without any attempt to verify the facts, acted upon a report submitted by a private investigator employed by him, naming merely the street and number of the premises but not the owner, secured the search of a residence occupied by a reputable citizen for a long period of years and his arrest without warrant upon a charge of which he was innocent, was held liable for false imprisonment. The trial court in that case had submitted to the jury the question of whether

there was probable cause for making the arrest of plaintiff and procuring a search of his house. In affirming the judgment of the lower court against the district attorney, the court said:

"Before there can be probable cause which would warrant the arrest of a person, there must be at least some information connecting that person with the commission of the alleged offense. It conclusively appears that the defendant Shepherd at no time had any information in his possession, nor was he informed, that the plaintiff was in any way connected with or suspected of the commission of the crime for which the arrest was made. The only information that he had before him was the reports of the investigators, two made on February 12th and the others on March 2d, in which the investigators reported they had visited a place at 291 Brush Street, and concluded from what they saw that the house was used for immoral purposes. But the owner of the place was not specified in either report. It is conceded that these reports were unreliable, because it appears without question that 291 Brush Street had been the home of Mr. Schneider for more than thirty years. The defendant Shepherd testified that he had no evidence against Schneider, and he relied entirely on the reports of the investigators. The office of prosecuting attorney is one of the most important which the people are called upon to fill, and the person selected becomes by virtue of his duties the legal adviser of the law-enforcing officers of the county. Unquestionably the defendant was actuated by the best motives in attempting by the methods he adopted to secure a better enforcement of the law than had theretofore obtained. Nevertheless, because of his very position, responsibility rested upon his shoulders to see that the safety of the ordinary citizen from illegal arrest be secured.

" * * The right of the citizen to freedom from illegal arrest, and the immunity of his home from unlawful search, should not hang upon as slender a

thread as is made out by the defendant's efforts to show probable cause. We are of the opinion that the facts in this case conclusively show, as a matter of law, that there was a want of probable cause on the part of the defendant Shepherd in instigating the arrest of the plaintiff, * * ."

In *Leong Yau* v. *Carden*, 23 Hawaii, 362, 369, the court said:

"A public prosecuting officer, in determining whether certain purported facts which have been brought to his attention justify the accusation and prosecution of a person believed to have committed an offense, acts in a *quasi*-judicial capacity, and he is not to be held liable in damages for an honest mistake or error of judgment in instituting a criminal proceeding against such person. But if he prosecutes without probable cause and with malice he certainly is in no better position than the judge of a court—superior or inferior—who proceeds maliciously and without any jurisdiction, or the head of an executive department who acts maliciously and without color of authority. Public prosecuting officers are entitled to protection against claims growing out of the discharge of their duties done in good faith though with erroneous judgment, but private individuals are entitled to the protection of the law against any conduct of such officers which is at once reckless, malicious and damaging."

In *Skeffington* v. *Eylward*, 97 Minn. 244 (105 N. W. 638, 114 Am. St. Rep. 711), an action for malicious prosecution, a judgment in favor of a party who had been prosecuted in a criminal action was given against the chairman of the board of town supervisors, whose official duty it was to prosecute violators of a statute relating to the obstruction of public highways. In sustaining the judgment, the court said:

"It is further urged on behalf of the defendant that, because it was his official duty to prosecute all

persons violating the provisions of the statute (G. S. 1894, § 1863) relating to the obstruction of public highways, he is not liable for a mistake of judgment, even if another has suffered by the mistake. If he acted upon probable cause, this would be true; otherwise not. The fact that he acted in his official capacity in making the complaint was, as the jury were instructed, a matter to be considered by them in determining the question of probable cause."

In *Carpenter* v. *Sibley*, 153 Cal. 215 (94 Pac. 879, 126 Am. St. Rep. 77, 15 Ann. Cas. 484, 15 L. R. A. (N. S.) 1143), an action for malicious prosecution, an appeal was had from a judgment rendered against a district attorney, his assistant and others. The judgment was upheld by the Supreme Court of California as against all of the defendants. The opinion shows that the question of whether an action for malicious prosecution could be maintained against a prosecuting officer was neither raised nor discussed, but the judgment was affirmed notwithstanding that it had been given against a district attorney and his assistant.

3. Referring now to the laws of this state applicable to the duties of a district attorney: By Section 17 of Article VII of the Constitution, prosecuting attorneys are declared to be law officers of the state and of the counties within their respective districts, and they are required to perform such duties pertaining to the administration of law and general police as the legislative assembly may direct. The statute, Section 1016, Or. Laws, provides that the district attorney in each district shall be the public prosecutor therein, and by Section 1018 his duties are prescribed as follows:

"He shall institute proceedings before magistrates for the arrest of persons charged with or reasonably

suspected of public offenses, when he has information that any such offense has been committed, * * .''

Under this statute, when a district attorney has information that a crime has been committed within his district, the law imposes upon him the duty to institute proceedings for the arrest and conviction of any person charged with, or reasonably suspected of, having committed the offense. While acting in conformity to the directions of the statute and in the cases provided for by the statute, he is not liable to respond in damages to any person for any injury which may be caused by the performance of his official duty, even if done maliciously, wantonly or corruptly. In such case his motives are wholly immaterial. But to afford this immunity to a district attorney he must conform to the statute and act only in cases provided for by the statute. There must be an offense committed, or at least he must reasonably believe that one has been committed, before he is authorized to cause the arrest of anyone. Unless the district attorney has reason to believe, or has at least some ground for believing, that an offense has been committed within his district, it is not within the line of his duty or the scope of his authority to cause the arrest of anyone. Under the allegations of this complaint the defendant Keator, knowing that the plaintiff had committed no offense and that his possession of the liquor was lawful under the statute, caused criminal proceedings to be instituted against the plaintiff and caused him to be arrested upon a charge for an offense which he, as district attorney, knew had not been committed. Such acts upon the part of the district attorney constituted an abuse of his office, an unwarranted usurpation of power, and were wholly unauthorized and illegal; for damages arising there-

from he is liable therefor in a civil action. Clearly the district attorney can enjoy no higher immunity than that given to a judge of a court of superior or general jurisdiction when acting wholly without authority of law upon a subject matter over which he knows he has no jurisdiction.

As this is a government of limited and defined powers, a government of laws and not of men, the powers, authority and jurisdiction of an officer are limited and restricted to those conferred upon him by law. The statute, in terms, confers upon prosecuting attorneys the power, and makes it their duty, when informed that a public offense has been committed within their district, to institute proceedings for the arrest and trial of persons accused or reasonably suspected of having committed the offense. Of necessity it follows that an officer who, in conformity to law, performs an official duty imposed upon him by statute, cannot be held liable in a civil action for damages resulting therefrom, but when, in a case not provided for by statute, he performs, without lawful authority, an illegal act injurious to the rights of some other person, he is liable to the injured party for the damages resulting from the unauthorized and illegal act.

As the statute defining the powers and prescribing the duties of district attorneys is for the protection of the public, it should be liberally construed to effectuate the purpose of its enactment, and wide latitude should be given to the exercise of discretion under it. But from this it does not follow that a district attorney is not to be held accountable in a civil action for damages at the suit of an injured party for maliciously causing the arrest of such party for a pretended offense, which, at the time of the arrest, he knew had not been committed at all; for in such case

the district attorney is not acting in the line of his duty or within the scope of his authority.

4. We are dealing here with the legal sufficiency of a complaint attacked by a demurrer. The demurrer admits the truth of the material facts pleaded, and these facts, as alleged, are sufficient to constitute a good cause of action against the defendant, whether in committing the acts charged he was acting in his official capacity or as a private individual. For these reasons the demurrer to the complaint must be overruled and it is so ordered.

REVERSED AND REMANDED.

BURNETT, J., not sitting.

---

Former opinion set aside and judgment affirmed on rehearing July 22, 1924.

ON REHEARING.

(228 Pac. 135.)

The judgment in this case having been reversed by opinion of this court reported in 222 Pac. 318, we have again considered it on reargument.

This is an action for damages, for an alleged malicious prosecution of Homer I. Watts by George Gerking, Alf Oftedahl, R. I. Keator, Mrs. Charles Betts and N. H. Desper, arising from an averred violation of the Prohibition Liquor Law by Watts, the plaintiff herein.

The complaint alleges the institution of a judicial proceeding against Watts; the want of probable cause for such original proceeding; malice; the termination of the original proceedings in favor of this plaintiff, and that plaintiff has sustained damages in the sum of $50,000.

The defendant R. I. Keator answered by filing a separate demurrer, in which, among other things, he averred the failure of the complaint to state facts sufficient to constitute a cause of action.

It was stipulated, and the issue of law made by the demurrer was tried upon the theory, that defendant Keator, at all the times mentioned in the complaint, was the prosecuting attorney for the district of Umatilla County, Oregon, and that this is an action for malicious prosecution.

From a judgment sustaining the prosecuting attorney's demurrer and dismissing the action as to him, plaintiff appeals to this court, assigning error of the court on the face of the record, in sustaining defendant Keator's separate demurrer and entering judgment.                              AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. Homer I. Watts* and *Mr. E. C. Prestbye.*

For respondent there was a brief over the names of *Mr. C. Z. Randall* and *Messrs. Fee & Fee,* with oral arguments by *Mr. Randall* and *Mr. James A. Fee, Jr.*

BROWN, J.—The precise question involved in this appeal has never before been presented to this court for determination.

Plaintiff's complaint avers that the defendants ransacked his residence and seized, on his premises, the following intoxicating liquors:

"91 quarts of whisky and brandy; 5 quarts of vermouth; 4 quarts of gin; 1 bottle of beer; 12 quarts of old Scotch whisky; 3 bottles of Virginia Dare; about 1 gallon of gin in a keg; 5 gallons of whisky in a keg; 2 gallons of Scotch whisky in a jug; part of a

bottle of kimmel; 1 small brown jug, and several parts of bottles of other intoxicating liquors,"

and that they falsely and maliciously accused him of violating the Prohibition Liquor Laws of this state. ·

It will be seen from the allegations of the complaint that the plaintiff possessed all the liquor that the information filed against him charged him with possessing, and that he was keeping it at his residence in Umatilla County, Oregon, as charged. The error made by the district attorney seems to consist in his charge as to the alleged use made of such liquor by the plaintiff, who avers that he purchased and stored the liquor in his residence prior to January 1, 1916.

5. In the beginning of our consideration of this appeal, we should remember that an action for malicious prosecution is not a favorite of the law.

"Public policy favors prosecutions for crime, and requires that a person who in good faith and upon reasonable grounds institutes such proceedings upon a criminal charge shall be protected. The presumption of law is therefore that every prosecution for a crime is founded on probable cause and is instituted only for purposes of justice." 19 Am. & Eng. Ency. of Law (2 ed.), 650.

The editors of Ruling Case Law have written:

" * * The action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage." 18 R. C. L., p. 11.

Again:

"Actions for malicious prosecutions are regarded by law with jealousy. Lord Holt said, more than two hundred years ago, that they 'ought not to be favored but managed with great caution.' Their tendency is to discourage prosecution for crime, as they expose the prosecutors to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecutions, when, if they fail, they may be subjected to the expense of litigation, if they be not mulcted in damages." Newell on Malicious Prosecution, p. 21.

6. The defendant asserts, in effect, that the district attorney was required by the Oregon Prohibition Law (Or. L., § 2224—55), to commence and prosecute that criminal action against the defendant, although the officer knew that the affidavit was perjured and that none of the statements relied upon were true. He contends that in the event of his failure to prosecute he would have subjected himself to the penalties prescribed by Section 2224—44 of the act.

In this contention we cannot agree. The district attorney, in determining whether to institute a prosecution, is a *quasi*-judicial officer, who possesses a certain discretion as to when, how, and against whom to proceed: 23 Am. & Eng. Ency. of Law (2 ed.), p. 275.

The power conferred upon a district attorney is not purely ministerial.

"Their discretion is limited; but that—as a necessity—they do possess a discretion, is indisputable. In nearly every instance, they alone determine when, how, and who to prosecute or sue in the name of the state." *Farrar* v. *Steele*, 31 La. Ann. Rep., p. 640.

The duty of the district attorney is well stated in *Commonwealth* v. *Nicely*, 130 Pa. 261, 270 (18 Atl. 737, 738), where the court said:

111 Or.—42

"The district attorney is a *quasi*-judicial officer. He represents the commonwealth, and the commonwealth demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers, as it is to see that no guilty man escapes."

"The prosecuting attorney is a sworn minister of justice, whose duty it is to see that the innocent are protected, as well as that the guilty are brought to punishment, and who must stand indifferent as between the accused and any private interest." Weeks on Attorneys at Law (2 ed.), § 282a.

The Supreme Court of Michigan, in *Engle* v. *Chipman,* 51 Mich. 524 (16 N. W. 886), spoke as follows:

"The prosecuting attorney is a very responsible officer, selected by the people and vested with personal discretion intrusted to him as a minister of justice, and not as a mere legal attorney. He is disqualified from becoming in any way entangled with private interests or grievances in any way connected with charges of crime. He is expected to be impartial in abstaining from prosecuting as well as in prosecuting, and to guard the real interests of public justice in favor of all concerned. This discretion is official and personal."

That part of the Prohibition Law defining the duties of a district attorney will be presumed to have been enacted by the legislature with full knowledge of the existence of Section 1018, Or. L., investing the district attorney with discretion, as well as charging him with a duty.

7. It is a familiar rule of interpretation that—

"In the construction of a particular statute * * all acts relating to the same subject * * should be read in connection with it, as together constituting one law." 36 Cyc. 1147, 1148.

8, 9. The provisions of the Prohibition Law relative to the duty of the district attorney to prosecute for

the commission of a crime did not repeal, either directly or by implication, Section 1018, Oregon Laws, defining his duties. That section of the Code should be read in connection with the provisions of the Prohibition Law defining his duties. In truth, the Prohibition Law is in accord with Section 1018.

"If any prosecuting officer shall be notified or have knowledge of or reason to suspect any violation of any of the provisions of the laws of this state relating to intoxicating liquors, it shall be his duty forthwith diligently to inquire into the facts of such violation * * ." Section 2224—50, Or. L.

This section authorizes the district attorney to issue process, commanding the attendance of persons who he believes have information of the violation of the liquor laws.

Section 2224—51 provides for the swearing of witnesses who are called before the district attorney, and for reducing their testimony to writing.

Section 2224—52 empowers the district attorney to administer oaths or affirmations to the witnesses before him.

Section 2224—54 provides:

"If the testimony so taken discloses that there is reasonable ground to believe that an offense has been committed, the prosecuting officer shall at once prosecute the person or persons suspected of committing the offense * * ."

Section 2224—55 enacts that—

"If the sworn statement of any witness so taken before any prosecuting officer or magistrate, as in the last preceding section provided, shall disclose the fact that intoxicating liquors are being kept for unlawful sale or purpose, or are being sold by an unknown person or persons, particularly describing such unknown person or persons, contrary to the provisions of this

act, at any place, particularly describing the place to be searched and the property to be seized, as hereinafter provided, within such county, it shall be the duty of such prosecuting officer forthwith to file his complaint or information charging such offense as shall appear to have been committed, * * verified by such prosecuting officers upon information and belief * * ."

"Verify.    Law, to confirm or substantiate by oath or proof."    Webster's New International Dictionary.

"Verify.    To confirm or substantiate by oath; to show to be true.    Particularly used of making formal oath to accounts, petitions, pleadings, and other papers."    Black's Law Dictionary; Anderson's Law Dictionary.

10. The law does not contemplate the filing of a verified information or complaint, as provided for in Section 2224—55 of our Code, in the absence of sufficient information upon the part of the district attorney to produce in his mind a reasonable belief of the truth of the charge.    Section 2224—50 requires the district attorney, whenever notified of a violation of the Prohibition Law, to make diligent inquiry for the purpose of ascertaining the facts relating to the charge; but the filing of a complaint by him depends upon whether or not there appears to him to be reasonable ground to believe that the offense charged has been committed.    When complaint is made, it is his duty to act for the purpose of ascertaining the facts, but it is not his duty to cause the arrest of any person unless there appears to be reasonable ground for such arrest.    Every prosecution for crime should be based upon probable cause.

"Probable cause does not depend on the actual state of the case, in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution."    *Bacon* v. *Towne,* 4 Cush. (Mass.) 239.

It is also urged in support of the demurrer, that the defendant Keator is not liable because of the fact that his act was of a judicial nature.

Much has been written concerning the liability of judicial and *quasi*-judicial officers to civil actions for acts of a judicial nature. The doctrine announced in the following case has frequently been approved:

"No public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally; but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty. The rule extends to judges, from the highest to the lowest, to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power. It of course applies only where the judge or officer had jurisdiction of the particular case, and was authorized to determine it. If he transcends the limits of this authority, he necessarily ceases, in the particular case, to act as a judge, and is responsible for all consequences. But with these limitations, the principle of irresponsibility, so far as respects a civil remedy, is as old as the common law itself." *Weaver* v. *Devendorf*, 3 Denio (N. Y.), 120.

There are many cases holding that a justice of the peace, in the performance of judicial acts within his jurisdiction, is not liable, although he may be actuated with malicious intent and corrupt motives: See extensive note to *Lacey* v. *Hendricks*, 137 Am. St. Rep. pp. 45, 49. But there are cases that seem to hold to the contrary. See notes, 6 Am. Dec. 303 and 19 Am. Dec. 490.

Mr. Freeman, in a note to *Lacey* v. *Hendricks*, *supra*, at page 50 said:

"There is conflict among the authorities as to whether a *quasi*-judicial officer is liable in a civil ac-

tion, even where his acts are malicious or corrupt; but there is no conflict as to his immunity from personal liability to the same extent as judges of courts, while he acts in good faith, and within the limits of the authority expressly granted to him. But the question is pretty well settled that a *quasi*-judicial officer acting in a judicial capacity, with jurisdiction, is protected in the discharge of his duties to the same extent as judges, and that while acting within the bounds of his authority the fact that he acts maliciously or corruptly will not affect his right to immunity from civil liability.''

*Fath* v. *Koeppel,* 72 Wis. 289 (39 N. W. 539, 7 Am. St. Rep. 867), was a case against a fish inspector who was vested with power to determine the quality and wholesomeness of fish offered for sale, and, if unwholesome, to condemn and destroy fish so offered. In that case, the Supreme Court of Wisconsin, in sustaining the demurrer to the complaint in an action for damages, said:

'' * * The officer exercising such a power is within the protection of that principle, that a judicial officer is not responsible in an action for damages to anyone for any judgment he may render, however erroneously, negligently, ignorantly, corruptly, or maliciously he may act in rendering it, if he act within his jurisdiction. This principle is stated and given force in *Steele* v. *Dunham,* 26 Wis. 393, by the present chief justice, to shield from liability members of an equalizing board, * * who are charged with liability for damages to the plaintiff for corruptly and oppressively increasing the valuation of certain property without proof. * * This principle protects all officers exercising judicial powers, whatever they may be called. It is 'a judicial privilege' and has 'a deep root in the common law,' and found 'asserted in the earliest judicial records and it has been steadily maintained by an undisturbed current of decisions': *Yates* v. *Lansing,* 5 Johns. 291. It is a discretionary au-

thority, where the determination partakes of the character of a judicial decision: *Druecker* v. *Solomon,* 21 Wis. 621 (94 Am. Dec. 471, and other authorities).''

Grounding their reasoning upon public policy, the authorities teach us that a grand juror is not answerable in damages in a civil proceeding for his action as such juror, however erroneous his action may be, and notwithstanding that such action may have been actuated by a malicious motive: *Hunter* v. *Mathis,* 40 Ind. 356; *Sidener* v. *Russell,* 34 Ill. App. 446; *Turpen* v. *Booth,* 56 Cal. 65 (38 Am. Rep. 48). This doctrine being applicable to grand jurors, there is no good reason why it should not shield the prosecuting attorney from civil liability in the case at bar.

*Turpen* v. *Booth, supra,* involves the question of the responsibility of a grand juror in a civil action, for damages for an act committed by him while acting as such grand juror in a case where an indictment was returned upon insufficient evidence and with the motive maliciously to injure the defendant, charged with illegal voting. The complaint set forth that each of the grand jurors took the oath prescribed by law, that ''they would present no person through malice, hatred, or ill will,'' but that regardless of their oath, the grand jurors, and each of them, were actuated and influenced by a desire to blast, tarnish and ruin the good name enjoyed by plaintiff among his fellows. It averred that the grand jurors pretended to receive and hear evidence against the plaintiff; that the law officer of the county, after hearing the evidence, instructed the grand jury that an indictment could not lie against the plaintiff upon the evidence adduced before it in support of the charge of illegal voting, and that, according to the evidence received, no crime had been committed; that notwithstanding the insuffi-

ciency in the evidence, the grand jurors "collectively and individually, willfully, falsely, and fraudulently, and without probable cause, and being possessed of actual malice and ill will against this plaintiff * * corruptly did pretend to find a true bill and indictment against this plaintiff for falsely and illegally voting, etc., and such indictment was duly presented by the foreman of the grand jury, and was filed according to law."

Defendants asserted that they were exempt from all liability, by virtue of a section of the Penal Code providing that a grand juror cannot be questioned for anything he may say or any vote he may give, relative to a matter legally pending before the jury, except in cases of perjury (citing Section 927, Penal Code, State of California).

The Supreme Court of California held that that section was but declaratory of the common law as it existed prior to the adoption of the statute, citing in support of its holding Wharton's American Criminal Law, § 509; Proffatt on Jury Trial, § 55; Chitty on Pleading, 89, which reads:

"Nor can an action be maintained against a juryman, or the attorney general, * * for an act done in the execution of his office, and within the purview of his general authority,"

and the leading case of *Bradley* v. *Fisher,* 13 Wall. 335 (20 L. Ed. 646, see, also, Rose's U. S. Notes), involving the liability of the judge of a court for malicious prosecution. The court further held that the power of the grand jurors, while acting as such, is *quasi*-judicial, and that they are not civilly answerable; that—

"they have certain duties to perform, under the law, of a *quasi*-judicial character, and in the performance

of such duties the law invests them with judgment and discretion. The grand jury was an essential part of the machinery of the County Court. They were not volunteers, but were engaged in the performance of a duty that was compulsory. In finding the indictment complained of, they acted within the legitimate sphere of their duty, and cannot be held civilly responsible. What is said by the learned judge in the case of *Scott* v. *Stansfield,* L. R. 3 Ex. 220—'This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences' —is applicable to this case."

11. The prosecuting attorneys of this state are specially charged with the enforcement of the provisions of the Prohibition Liquor Law. However, like grand jurors, they are vested with some discretion and judgment. The defendant R. I. Keator is one of the law officers of the State of Oregon. His jurisdiction is confined to the limits of Umatilla County. In the absence of statutory regulations, the prosecuting attorney, in his district, possesses the power of the attorney general at common law: *State* v. *Douglas County Road Co.,* 10 Or. 198, 201; *State ex rel.* v. *Lord,* 28 Or. 498 (43 Pac. 471, 31 L. R. A. 473); *State ex rel.* v. *Metschan,* 32 Or. 372 (46 Pac. 791, 53 Pac. 1071, 41 L. R. A. 692); *State* v. *Guglielmo,* 46 Or. 250 (79 Pac. 577, 80 Pac. 103, 7 Ann. Cas. 976, 69 L. R. A. 466); *State* v. *Millis,* 61 Or. 245 (119 Pac. 763); *Gibson* v. *Kay,* 68 Or. 589 (137 Pac. 864).

In the case of *Griffith* v. *Slinkard,* 146 Ind. 117 (44 N. E. 1001), the Supreme Court affirmed the decision of the lower court in an action against the prosecuting attorney, wherein it was claimed that he procured an

indictment maliciously and without probable cause. In that case the court wrote:

"In *State* v. *Henning,* 33 Ind. 189, at page 191, this court said: 'The turning point in the case is this: Is a prosecuting attorney an officer entrusted with the administration of justice? * * He is the law officer of the court, to whom is entrusted all prosecutions for felonies and misdemeanors. 2 G. & H., page 430, section 4. He is the legal adviser of the grand jury. We think he is "an officer entrusted with the administration of justice."' * * 'Whenever duties of a judicial nature are imposed upon a public officer, the due execution of which depends upon his own judgment, he is exempt from all responsibility by action for the motives which influence him and the manner in which said duties are performed. If corrupt, he may be impeached or indicted, but he cannot be prosecuted by an individual to obtain redress for the wrong which may have been done. No public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which produced it.' Townshend, Slander and Libel (3 ed.), Section 227, pages 395–6. * * There is therefore no more liability against the prosecuting attorney than there is against the grand jury for the return of an indictment maliciously and without probable cause."

A leading case is *Smith* v. *Parman et al.,* 101 Kan. 115 (165 Pac. 663, L. R. A. 1917F, 698). From that case, we carve:

"The public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs much the same function as a grand jury. If, while he has a question of that kind under advisement, he is charged with notice that he may have to defend an action for malicious prosecution in case of a failure to convict, his course may be influenced by that consideration, to the disadvantage of the public. Communications made to a public prosecutor relating

to offenses against the law are treated as privileged, because 'persons having knowledge regarding the commission of a crime ought to be encouraged to reveal to the prosecuting attorney fully, freely, and unreservedly, the source and extent of their information' (citation). We think the reason for granting immunity to judges and grand jurors applies with practically equal force to a public prosecutor in his relations to actions to punish infractions of the law. There is no great danger that abuse of power will be fostered by this exemption from civil liability, for the prosecutor is at all times under the wholesome restraint imposed by the risk of being called to account criminally for official misconduct * * , or of being ousted from office on that account. * * ''

That case is annotated by a note on the subject of liability of public prosecutor to action for malicious prosecution, wherein the editor says:

"The decision in *Smith* v. *Parman, ante,* p. 698, that a public prosecutor is not liable in a civil action for having instituted or maintained a criminal prosecution, is supported by what seems to be the only case directly in point."

In the same note, the editor quotes from Stephen on Malicious Prosecution, Section 85, where it is written:

"I know of no instance in which any person has been sued for a prosecution ordered by any officer of state, and I doubt if such an action would lie. Prosecutions may be directed by a secretary of state, the attorney general, or the director of public prosecutions, and I know of no direct authority as to whether or not an action for malicious prosecution would lie against any of these officers for what they have done in their official capacities."

See, also, *Cottam* v. *Oregon City,* 98 Fed. 570; *Parker* v. *Huntington,* 2 Gray (Mass.), 124, 18 C. J. 1318.

However, there is now a case that takes the contrary view and which expressly states that it doubts the correctness of the text in *Griffith* v. *Slinkard, supra.* We refer to the case of *Leong Yau* v. *William T. Carden,* 23 Hawaii, 362, wherein the defendant, deputy city and county attorney of the City and County of Honolulu, was charged with the duty of investigating criminal charges, and, in proper cases, of prosecuting the same. A complaint was filed alleging that the deputy county and city attorney, without probable cause, and with malice, had instituted criminal proceedings against the plaintiff; that the plaintiff had sustained damages by reason of the prosecution, and that the proceedings in the action for damages had terminated in favor of the plaintiff. On appeal, the court overruled the judgment of the lower court sustaining demurrer to the complaint. See, also, *Schneider* v. *Shepherd,* 192 Mich. 82 (158 N. W. 182, L. R. A. 1916F, 399); *Skeffington* v. *Eylward,* 97 Minn. 244 (105 N. W. 638, 114 Am. St. Rep. 711).

12. It is well to observe while passing that—

"Jurisdiction always depends upon the allegations, and never upon the facts. * * The truth of the allegations does not constitute jurisdiction." Van Fleet's Collateral Attack, § 60.

A valuable case is *Cooke* v. *Bangs,* 31 Fed. 640, 644, opinion by Mr. Justice BREWER.

13. In considering the demurrer, we must accept as true all well-pleaded allegations of the complaint. When plaintiff's complaint is laid bare, stripped of its many expletives, it will be seen that much material matter contained in the district attorney's information was true. What particular matter that information contained that was willfully false, we are not told.

14, 15. The policy of the state with reference to intoxicating liquor is expressed by its "bone dry" law, and under its provisions the mere possession of intoxicating liquor, with certain exceptions, is a crime. In a charge of possession, it is unnecessary to plead such exceptions: *State* v. *Rosasco,* 103 Or. 343 (205 Pac. 290). The plaintiff herein had in his possession, at his residence, a large quantity of intoxicating liquor, as charged by the prosecuting attorney. That liquor, according to the complaint in the civil action, was purchased and stored prior to January 1, 1916, and hence possession alone was not an offense. However, there is no presumption that the district attorney was informed of that fact.

In reaching a decision, we are confronted with a determination that concerns public policy. We are face to face with a law-enforcing problem. Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it in execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution.

We do not know, nor do we intimate, that either the plaintiff or the district attorney has been guilty of an offense. Our observations have reference to the charge contained in the complaint.

We have seen that the district attorney owes as great a duty to protect the innocent as to prosecute the guilty. It is hard to conceive of a greater wrong than that of knowingly, falsely and maliciously accusing an innocent man of the commission of a crime. A good name, good repute as a citizen, is reckoned as a thing of priceless value. The right to liberty and happiness is rated high. The law of criminal procedure is not a public invitation for a district

attorney or any one else to attack the reputation of citizens at the expense of the taxpayer. No official is above the law. "Thou shalt not bear false witness" is a command of the Decalogue, and that forbidden act is denounced by statute as a felony. It is almost inconceivable that any district attorney should commit the offense of subornation and perjury, as charged by plaintiff, and thus subject himself to criminal prosecution. The criminal statutes apply as surely to him as to any other person. All persons are equal before the law. Willfully and falsely to accuse any person is not a private matter. It is of public concern. A corrupt district attorney, who would resort to subornation and perjury for the purpose of fastening a crime upon an innocent man should, and would, be hurled from power by an aroused public conscience. The public is concerned in the enforcement of its criminal statutes, but it is equally interested in an honest enforcement thereof, and the term "honesty" admits of but one meaning. The public policy of the state affords ample protection to the innocent, and a prosecutor's endeavors should not be weakened by back-fire in the nature of malicious prosecution.

After mature deliberation upon the facts contained in the record before us, and in consideration of the policy of the state in the matter of enforcement of criminal statutes, we hold that the demurrer should be sustained. It follows that our former decision should be set aside, our opinion recalled and the judgment of the lower court affirmed. It is so ordered.

FORMER OPINION SET ASIDE AND JUDGMENT AFFIRMED.

BURNETT and RAND, JJ., dissent.

McBRIDE, C. J., Specially Concurring.—I concur in the result of the opinion by Mr. Justice BROWN for the sole reason that a district attorney is, by virtue of Section 17, Article VII, of our Constitution, a *quasi*-judicial officer, and the rules in regard to judicial officers apply therefore with equal force to him. I think the weight of opinion is that, where a justice of the peace, or other judicial officer, acts within his jurisdiction, even though he acts maliciously, a plaintiff will not be heard to urge that fact; and this upon the ground of public policy.

The filing of a complaint in this class of criminal action is within the jurisdiction of a district attorney, and is an important part of his duties. Whatever may be the actual facts in this case, and for the present purpose we must take the complaint as stating the actual facts, it is plain that it only states what could be alleged by any defendant who happened to be acquitted of a criminal charge, against any district attorney, and with comparative immunity from prosecution for perjury. The verification to a complaint requires that the plaintiff shall only swear that he believes the allegations of the complaint to be true, and this form of verification reduces the allegations of the complaint, in substance, to averments that the plaintiff believes the statements therein· to be true, and upon this it is plain that in the ordinary case no prosecution for perjury could be maintained, however absurd the plaintiff's grounds of belief, or alleged grounds of belief, may be.

I think public policy dictates rather that one citizen should suffer some financial loss than that the district attorneys of the state should be harassed by actions, to defend which might require a large por-

tion of their time, to which the public has a right, and a large portion of the emolument prescribed by law as compensation for their services; and that it is better on the whole, that redress be afforded by prosecutions for misconduct in office than that the results above indicated should be made possible. On this sole ground I concur with Mr. Justice BROWN in his opinion.

It is to be regretted that the district attorney saw fit to rest his defense upon technical grounds instead of defending upon the merits, but that is a mere question of official ethics, which he has a right to determine for himself.

BURNETT, J., Dissenting.—As to violations of the Prohibition Law, the jurisdiction of the district attorney is thus defined in Section 2224—44, Or. L.:

"It shall be the duty of the district attorneys in this state to diligently prosecute any and all persons violating any of the provisions of, and otherwise to enforce, this act in their respective counties."

Under Section 2224—50 it is his duty to institute inquiry when he is notified or has knowledge of or reason to suspect any violation of the liquor laws. He may also, by the same section, impose the duty of inquiry upon a magistrate. Preliminary inquiry is quite different from actual arrest and prosecution. The latter is applicable only to "persons violating any of the provisions" of the law.

In this government of the people, by the people, for the people, no officer is clothed with arbitrary, autocratic or irresponsible power with which he may knowingly oppress an innocent person. I fully agree with the principle that any judicial officer, district attorney or grand juror, while acting within the scope

of his authority, is protected from either civil or criminal liability, though his actuating motive may be malicious. He may depend upon testimony of witnesses if he has no knowledge of nor reason to suspect its want of truth although the event may demonstrate its falsity. But when, as charged in the complaint herein, he knows that the charge he promotes is false, he has no right to seize upon some isolated inconclusive circumstance and institute a prosecution upon it. It is the scienter that strips from him the immunity of his official station. A person whom the district attorney knows to be innocent is not one of those within his jurisdiction to prosecute. When he has actual knowledge of innocence he cannot have reasonable cause to believe guilt. Only a person who is an actual violator of the law or whom the district attorney has reasonable cause to believe is such violator is amenable to prosecution by that officer. All others are beyond the pale of his authority and as to them when he knows they are guiltless he acts at his peril, for there can be no wrong without a remedy.

Whether, on issue joined, the plaintiff may be able to prove his allegation that the defendant, who it is said *sub rosa* is district attorney, knew that the former was innocent, is not a question to be determined here. All we have before us is the sufficiency of the complaint as against a general demurrer. I concur with Mr. Justice RAND.

RAND, J., Dissenting.—Since the former decision of this court reported in 222 Pac. 318 was rendered, a petition for rehearing was granted. A reargument has been had and the cause is again before us for decision. We shall make no attempt to restate the

facts, but confine ourselves to such facts only as are necessary for a proper understanding of the questions now before us.

This is an action for malicious prosecution, and the questions for decision arise upon a demurrer to the complaint. The gist of the cause of action alleged in the complaint is the fact that the defendant knew that the plaintiff was innocent and that he lawfully had in his possession certain intoxicating liquor, of which he was making no unlawful use or disposition, and, knowing these facts, falsely and maliciously accused and charged, and instigated others to falsely and maliciously accuse and charge, the plaintiff with the commission of a criminal offense concerning his possession, use and disposition of said liquor, and caused plaintiff to be prosecuted upon said false and fictitious charge in the courts of Umatilla County, and, upon the trial, instigated others to swear falsely against the plaintiff, knowing at the time that the charge itself was a false, fictitious and trumped-up one.

Whether, as intimated, the allegations are stronger than the proof and the plaintiff will be unable to sustain them by proof, is a question that can be determined only upon the trial. That question is of no concern to us at this time, for, if the fact intimated is true, it affords no ground for sustaining the demurrer. The legal effect of the demurrer is to admit the truth of the facts as stated in the complaint, and the only office it can perform is to object to the legal sufficiency of the complaint itself. If the complaint does state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, the demurrer, as a matter of law, must be overruled, regardless of whether or not, upon the

trial, plaintiff can establish the truth of his allegations.

It is contended, however, although that fact is not alleged in the complaint, that because the defendant Keator was the duly elected, qualified and acting district attorney for Umatilla County and because the plaintiff had in his possession certain intoxicating liquor, the possession of which, if acquired prior to the enactment of the prohibition statute, and no unlawful use being made of it, would, under the statute, be lawful, the prohibition statute itself contains terms which authorized the district attorney to do the acts complained of, even though at the time he knew that no crime had been committed by the plaintiff. That the legislature did not so intend, and even if it had such an intent, that it had no such power, is beyond the possibility of successful controversy. That the statutes referred to confer no such power plainly appears from the express terms thereof.

"If any prosecuting officer shall be notified or have knowledge of or reason to suspect any violation of any of the provisions of the laws of this state relating to intoxicating liquors, it shall be his duty forthwith diligently to inquire into the facts of such violation. * * " Section 2224—50.

"If the testimony so taken discloses that there is reasonable ground to believe that an offense has been committed, the prosecuting officer shall at once prosecute the person or persons suspected of committing the offense. * * " Section 2224—54.

"If the sworn statement of any witness * * shall disclose the fact that intoxicating liquors are being kept for unlawful sale or purpose or are being sold by an unknown person or persons * * contrary to the provisions of this act * * it shall be the duty of such prosecuting officer forthwith to file his complaint

or information charging such offense as shall appear to have been committed. * * '' Section 2224—55.

Under the provisions of these statutes, when can it be said that it becomes the duty of an officer to act? The statutes themselves answer the question. It becomes his duty, under the first section quoted, to inquire into the facts when he is notified or has knowledge of or reason to suspect any violation of any prohibition law. Under the second section, it becomes his duty to prosecute the person suspected when the testimony discloses that there is reasonable ground to believe that an offense has been committed, and under the latter it becomes his duty to file a complaint charging an offense when the sworn statement of any witness discloses the fact that intoxicating liquors are being kept for unlawful sale or purpose, or are being sold by any person contrary to the provisions of the act. It is not reasonable to say that anything to be found in these statutes confers any power or authority upon a district attorney to falsely and maliciously charge another with the commission of a criminal offense which he knows him to be innocent of. Unless a district attorney is notified or has knowledge of, or has some reason to suspect that a crime has been committed, there is nothing before him which authorizes him to make any inquiry or do any act in the exercise of his *quasi*-judicial capacity. When a district attorney falsely and maliciously charges a person with the commission of an offense which he knows him to be innocent of, he is acting beyond the scope of any authority conferred by statute and in direct violation of the implications of the statute, and is responsible, like others, for the consequences of his own wrongful act.

The authorities relied upon by Mr. Justice BROWN, namely, *Weaver* v. *Devendorf,* 3 Denio (N. Y.), 120; Mr. Freeman's note to *Lacey* v. *Hendricks,* 137 Am. St. Rep., pp. 45, 50; *Fath* v. *Koeppel,* 72 Wis. 289 (39 N. W. 539, 7 Am. St. Rep. 867), and 1 Chitty on Pleading, *89, afford no support for the contention that because the defendant, in falsely and maliciously accusing the plaintiff of an offense which he knew he had not committed, was acting in his official capacity he is not liable, under the facts alleged in the complaint, for the damages resulting from his wrongful acts. In the first case cited, the court clearly states the law which, we think, ought to be controlling here.

"No public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally; but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty. The rule extends to judges, from the highest to the lowest, to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power. It of course applies only when the judge or officer had jurisdiction of the particular case, and was authorized to determine it. If he transcends the limits of this authority, he necessarily ceases, in the particular case, to act as a judge, and is responsible for all consequences. But with these limitations, the principle of irresponsibility, so far as respects a civil remedy, is as old as the common law itself."

Under this authority, if it can reasonably be said that the district attorney, in maliciously and knowingly making a false accusation against another and causing him to be prosecuted therefor, had jurisdiction of the particular case and was acting in the exer-

cise of his judicial power and was not transcending the limits of his authority, then the excerpt quoted would sustain this contention, but as this cannot reasonably be said his acts bring him within the class for which that court said he is responsible for all consequences; for it must be clear that a district attorney, in making a false charge against a person whom he knows to be innocent, is neither acting as a judge nor in the performance of a duty, either judicial or *quasi* judicial.

Nor do we disagree with anything contained in the statement made by Mr. Freeman to the effect that there is no conflict among the authorities as to the immunity from personal liability of a district attorney or other person acting in a *quasi*-judicial capacity to the same extent as judges of courts "while he acts in good faith and within the limits of the authority expressly granted to him." What we assert is that, under the facts alleged, the defendant was not acting in good faith, nor in the discharge of his duty, nor within the bounds of his authority, and, for acting wholly without authority and maliciously, he is liable for the resultant damages, as stated by Mr. Freeman.

We also agree with the principles stated in the last case cited, where the court said:

"The officer exercising such a power is within the protection of that principle, that a judicial officer is not responsible in an action for damages to anyone for any judgment he may render, however erroneously, negligently, ignorantly, corruptly, or maliciously he may act in rendering it, if he acts within his jurisdiction."

Mr. Chitty, in his first volume on Pleading, *89, said:

"An action cannot be maintained against a civil or ecclesiastical judge or justice of the peace, acting

judicially in a matter within the scope of his jurisdiction, although he may decide erroneously in the particular case. Nor can an action be maintained against a juryman, or the attorney general, or a superior military or naval officer, for an act done in the execution of his office, and within the purview of his general authority. And commissioners of bankrupts are not liable to an action of trespass for committing a person who does not answer to their satisfaction when examined before them touching the bankrupt's estate and effects. But if a public officer have no jurisdiction whatever over the subject matter, and his proceedings are altogether *coram non judice,* he is responsible."

Hence we hold that, while the law is settled that an action will not lie against a judge for any act done in his judicial capacity, nor against a grand juror for finding an indictment, nor against a petty juror for his verdict, nor against a district attorney for an act done in his *quasi*-judicial capacity, this principle has no application to the facts alleged in the complaint now under consideration.

It is argued that this action should not be maintained because it has often been held that actions for malicious prosecution are not favored by the law and that the public policy and convenience requires that persons shall be protected from civil liability who have, in good faith and upon reasonable grounds, instituted proceedings for the prosecution of persons upon a criminal charge. Where a prosecution upon a criminal charge has terminated favorably to the party accused and the proceedings were instituted maliciously and without probable cause, the law has always given to the injured party a remedy in damages for the wrong done him by an action for malicious prosecution.

"For this, however," says Sir William Blackstone, "the law has given a very adequate remedy in damages, either by an action of conspiracy, which cannot be brought but against two at the least; or, which is the more usual way, by a special action on the case for a false and malicious prosecution." 3 Blackstone, *126.

There is but one legal ground upon which any argument can be advanced in support of the nonliability of the defendant in the instant case. That is on the principle that the law will rather suffer a private mischief than a public inconvenience. That principle is an exception to the well-recognized rule that there is no wrong without a remedy and is founded wholly upon principles of public policy and convenience. But the rule ought not to be applied here, for the complaint not only alleges the presence of malice and want of probable cause, but also the additional element that the criminal charge upon which the plaintiff was prosecuted was not only preferred by the defendant himself, but was made by him with knowledge upon his part at the time that he was making a false charge and that the plaintiff was innocent of the crime he was charging him with. It therefore appears from the allegations of the complaint, which are now admitted to be true, that the defendant falsely charged the plaintiff with the commission of a criminal offense. These allegations charge the defendant with the doing of an act in a manner which the early common-law judges term as *falso et malitiose*. The term imports not only the making of a false charge maliciously, but the making of it wickedly. As the defendant was a prosecuting officer, if the act had been done either ignorantly or rashly, for doing it, the law might hold him excusable. But

as the act was done wickedly, with full knowledge of its falsity, the doing of the act, in law, was neither justifiable nor excusable, and the defendant ought to be compelled to answer for the consequences of his wrongful act. Public policy, as has frequently been held, is, at most, a vague and uncertain guide, and was designated by Burroughs, J., as "an unruly horse pursuing us and when once you get astride of it, you never know where it will carry you." 2 Bing. 229. To contend, under any proper conception of sound public policy, that any prosecuting officer has the privilege of bringing a person into court and charging him with and prosecuting him for a crime which he knows him to be innocent of, without being answerable for the damages caused thereby, upon the theory that the public good will be best subserved thereby, is a proposition too monstrous to be debated in a court of justice; for it must be obvious to any reasonable mind that this would place in the hands of an unscrupulous officer, powers which are not consistent with good government nor the welfare of society.