[Civ. No. 799.   Third Appellate District.—March 15, 1911.]

## A. H. CARPENTER, Appellant, v. W. F. SIBLEY et al., Respondents.

ACTION FOR MALICIOUS PROSECUTION BY COUNTY OFFICERS—ORDER DENY-
ING CHANGE OF VENUE—POSSIBILITY OF FAIR TRIAL—CONFLICTING
AFFIDAVITS—REVIEW UPON APPEAL.—In an action for a malicious
prosecution of the plaintiff upon a criminal charge by defendants
as officers of the county in which it is brought, where plaintiff
moved for a change of venue upon affidavit that he could not have
a fair and impartial trial in that county before any jury, the con-
tents of which were controverted by counter-affidavits for defend-
ants, and the *voir dire* examination of the jurors is not in the record,
it cannot be held, in view of the action of the court in denying
the motion, upon the conflicting affidavits, that a single citizen
liable for jury duty in the county was disqualified from giving the
plaintiff a fair and impartial trial, and the order denying the
motion must be affirmed.

ID.—MALICIOUS PROSECUTION FOR SUBORNATION OF PERJURY—GRAVAMEN
OF ACTION—WANT OF PROBABLE CAUSE—LACK OF KNOWLEDGE OR
INFORMATION.—The gravamen of the charge of malicious prosecution
of the plaintiff by the defendants, upon the criminal charge of
subornation of perjury is that the defendants instituted the crim-
inal prosecution without probable cause—that is, without having
such knowledge or information as would superinduce in the mind
of an ingenuous and unprejudiced person a reasonable belief that
plaintiff was guilty of the charge.

ID. — DEFENSE — REASONABLE  GROUNDS  TO  BELIEVE  CHARGE  WELL
FOUNDED.—The defense must be that defendants did believe, and
had reasonable grounds to believe, that the accusation was well
founded.

ID.—NATURE OF PROBABLE CAUSE.—Probable cause does not depend on
the actual state of the case in point of fact, but upon the honest
and reasonable belief of the party prosecuting.

ID.—JUDGMENT FOR DEFENDANTS—APPEAL—REVIEW OF EVIDENCE—PROB-
ABLE CAUSE FOR PROSECUTION ESTABLISHED.—Where the judgment
was for the defendants, it is held in view of the evidence and
circumstances appearing in the record, that no appellate court can
say that the district attorney had no legal right to believe that
plaintiff was guilty of the crime of subornation of perjury, for
which he was indicted, and that it was his duty to prosecute him for
that offense.

ID.—ABSENCE OF PROOF OF CONSPIRACY.—It is held that the charge of
conspiracy between the officers of the county is not proved, that

it appears that the acts of the officers defendant other than the district attorney were taken in good faith in the line of their official duty, and were dependent upon and subordinate to the action of the district attorney in prosecuting plaintiff for the offense for which he was indicted.

ID.—BURDEN UPON PLAINTIFF TO MAKE WANT OF PROBABLE CAUSE APPEAR.—The burden of proof is upon the plaintiff both to prove a want of probable cause and to make it appear in the record upon appeal.

ID.—IMPROPER QUESTION TO GRAND JUROR—COLLATERAL IMPEACHMENT—IRRELEVANCE TO ISSUES.—The court properly disallowed a question by plaintiff to a grand juror whether he intended to find the indictment against plaintiff. The grand juror could not thus be collaterally impeached as to his official action; nor had the question any relevance to the issues of probable cause or conspiracy.

ID.—STATEMENT OF PERJURY BY WITNESS SUBORNED—RELEVANCE TO PROBABLE CAUSE.—A written statement showing the admission of perjury by the witness alleged to have been suborned by plaintiff, proved to be in his handwriting, was admissible as showing information upon which the district attorney acted, and as bearing upon the question of probable cause.

ID.—SOURCES OF INFORMATION BY DISTRICT ATTORNEY—HEARSAY.—The proof of probable cause depending upon the honest and reasonable belief of the district attorney may involve, in part at least, hearsay declarations imparted to the district attorney prior to the prosecution. It was competent for the district attorney to testify to the sources of his information, as well as to state facts within his own knowledge.

ID.—ABSENCE OF PREJUDICIAL ERROR IN RULINGS—PROBABLE CAUSE ESTABLISHED.—It is held that there was no prejudicial error in evidence, or in the instructions of the court, for the reason that the only conclusion warranted by the evidence is that there was probable cause for the prosecution, and that the court would have been authorized to instruct the jury to find a verdict for defendant for the same reason.

ID.—PREVAILING RULE AS TO EFFECT OF CONVICTION—CONCLUSIVE EVIDENCE OF PROBABLE CAUSE—REVERSAL IMMATERIAL.—The prevailing rule is that when a person is charged before a competent court having jurisdiction of the matter, and is tried and found guilty, the judgment rendered, if not obtained by fraud, is conclusive evidence of probable cause for making the charge, even though it is afterward held to be unauthorized and reversed upon appeal.

ID.—ABSENCE OF EVIDENCE OF FRAUD OR CONSPIRACY TO PRODUCE FALSE EVIDENCE.—It is held that there is no evidence worthy of the name to prove the charge that the defendants conspired together to produce false evidence before the grand jury and to punish plaintiff by means of false evidence.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a motion to change the place of trial. F. H. Smith, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, Appellant, *in pro. per.*

Clary & Louttit, and C. L. Neumiller, for Respondents.

BURNETT, J.—The defendant, W. F. Sibley, was the sheriff, the defendant, A. H. Ashley, the district attorney, and the defendant, George F. McNoble, the assistant district attorney of San Joaquin county during all the times mentioned 'in the complaint. The Fidelity and Deposit Company of Maryland was the surety on the official bond of said Sibley, and John N. Stennett, the other defendant, was, it is alleged in the complaint, ''a thief and perjurer who bartered his testimony to other defendants herein for immunity from crime.''

Among the allegations against these defendants is that ''they corruptly, maliciously and without probable or any cause prosecuted plaintiff before the grand jury and before a trial jury in the superior court and on appeal before the supreme court for the crime of subornation of perjury and whereby they obtained a judgment of conviction against plaintiff by means of fraud, coercion and by false and perjured testimony.'' Plaintiff was convicted and sentenced to the penitentiary for five years, but the judgment was reversed by the supreme court. (*People* v. *Carpenter,* 136 Cal. 391, [68 Pac. 1027].) The said criminal action was thereupon dismissed by the district attorney, but after the defendant therein had suffered confinement in the county jail for a period of two hundred and sixty-one days.

The trial herein was before a jury and a general verdict was rendered in favor of defendants. The appeal is from the judgment and the order denying a motion for a change of venue.

It is apparent that we cannot disturb this latter order. The only evidence in support of the motion is found in the affidavit of plaintiff wherein he sets out that ''he has reason to believe and does believe that he cannot have a fair and impartial trial

of said action in said county before said or any jury," for certain reasons, which he enumerates. The material facts therein averred are all denied in the counter-affidavits of the sheriff, the district attorney and assistant district attorney and these defendants are positive in the opinion that there was nothing to prevent the plaintiff from having a fair trial. The *voir dire* examination of the jurors is not included in the transcript, and hence we cannot hold, in view of the action of the court below upon conflicting affidavits, that a single citizen liable for jury duty in the county was disqualified to give plaintiff a fair and impartial trial.

Many points are made by appellant for a reversal of the judgment. Those that we consider of sufficient importance to merit consideration we proceed to notice.

In the first place, it is insisted that no evidence was produced that plaintiff committed the crime charged against him, and therefore it must be held that he was prosecuted without probable cause. The gravamen of the perjury charge in the indictment is that at the trial in the justice court of Stockton township of the charge of petit larceny against one Arthur Ennis, J. H. Stennett falsely testified "in substance and to the effect that he, the said J. H. Stennett, did not at any time on the night of January 8th, A. D. 1901, or on the morning of January 9, 1901, or at all, see one Arthur Ennis on the premises of the said J. H. Stennett, near Lodi, in San Joaquin county," and the particular charge in said indictment against plaintiff herein was that the "said A. H. Carpenter, at and in said San Joaquin county, California, on or about the 23d day of January, A. D. 1901, did feloniously, willfully and corruptly, knowing the testimony so given by the said J. H. Stennett as aforesaid would be, and was knowingly, willfully and corruptly false as aforesaid, and well knowing that the said J. H. Stennett well knew that the said statement that he, the said J. H. Stennett, was about to make and did make under oath, in the manner and form aforesaid, was knowingly, willfully and corruptly false, suborn, incite and procure the said J. H. Stennett, being so sworn as aforesaid, to feloniously, knowingly, willfully and corruptly and falsely testify as aforesaid."

Plaintiff's contention is that the only evidence that he committed the offense is found in the answers to three leading and

suggestive questions asked of the said John H. Stennett, as follows: "Q. I will ask you whether he asked you then and there that afternoon whether or not you ever saw the defendant Ennis at any time out to your premises on the 8th day of January or the morning of the 9th of January, or at all? A. Yes, sir. Q. What did you answer to that? A. No, sir. Q. I will ask you whether or not at any time previous to the time that you—that question was asked you and that answer given by you—whether Carpenter had ever talked over with you that that was to be your answer to that question? A. Yes, sir." It is further contended that since the relation of attorney and client existed at the time mentioned between the said Carpenter and Stennett, "the act of 'talking over' the said testimony was in no sense a crime, but a professional duty on the part of plaintiff as such attorney."

There is no question as to the rule. It is well stated in *Harkrader* v. *Moore,* 44 Cal. 151, as follows: "The gravamen of the action is that the defendant instituted the proceedings without probable cause—that is, without having at the time such knowledge or information as would superinduce in the mind of an ingenuous and unprejudiced person of ordinary capacity a reasonable belief that the plaintiff was guilty of the charge. The defense must be that he did believe, and had reasonable grounds to believe, that the accusation he made was well founded. 'Probable cause does not depend on the actual state of the case, in point of fact, but upon the honest and reasonable belief of the party prosecuting. It must appear that the defendant knew of the existence of these facts which tended to show reasonable and probable cause, because without knowing them, he could not act upon them; and also that he believed the facts amounted to the offense which he charged, because otherwise he will have made them the pretext for prosecution without even entertaining the opinion that he had a right to prosecute.' (2 Greenleaf on Evidence, 455.)"

Of course, it is apparent that the term "knowledge," as used in the foregoing quotation, is not confined to personal observation, but it includes that and also information obtained through the ordinary and generally recognized channels of communication. With this view of the requirement of the rule "of probable cause," if the evidence quoted by appellant

15 Cal. App.—38

were all that was submitted to the grand jury, we could hardly escape the conclusion that the district attorney had failed to justify his prosecution, but an examination of the whole record places the matter in an entirely different light. Mr. Ashley was put upon the stand by appellant and interrogated as to his reasons for the course he (Ashley) pursued. From his lengthy statement we select the following significant facts: On January 21st the case of the *People* v. *Davis* came on for trial. Carpenter telephoned Ashley that if the Stennetts were absent he (Carpenter), who represented Davis as well as Ennis and the Stennetts, would consent to a continuance. Carpenter was placed upon the stand and stated that after Stennett was acquitted a day or two before, he, Carpenter, went from the justice court to his office, but, as a matter of fact, the district attorney learned that Carpenter had gone to the Roosevelt lodging-house, on Main street, and while he was there a note was taken out to the Stennetts over the back fence down to the Standard lodging-house, advising them to get out of town, to go down the Santa Fe railroad track, and take the train and get out that way. The statements of the Stennetts were taken very carefully and corroborating evidence was obtained that they had visited Mr. Carpenter at his office and had seen him on the street at such times as they mentioned. Before the trial of the Ennis case the district attorney had received from the sheriff a written statement made by Stennett in the county jail, on January 11, 1901, in which he declared that Ennis and Davis were at his house at the time in dispute, that they came there to borrow his "rig," and said they were going to Sargent's to get some pork, and they came back between half-past 2 and 3 in the morning with a hog in the wagon. In said statement was given a minute account of what occurred. At the trial of Ennis, Mr. Ashley heard the witness Stennett testify that he did not see Ennis at his home on the night in question. After court was adjourned the district attorney asked the sheriff to arrest Stennett for perjury, and, in reply to Mr. Carpenter's statement that it was a bulldozing scheme, Mr. Ashley said it was a serious matter—so serious that Mr. Carpenter's connection with it would have to be investigated and laid before the grand jury, and that Carpenter would have an opportunity himself to be heard. Immediately after the trial of Stennett, Mr.

Wall, a deputy sheriff, told Mr. Ashley to hurry and get a subpoena, as he had seen Carpenter beckon Stennett to go. The constable, James Grant, reported that he had gone to Carpenter's office and could get no information as to Stennett's whereabouts. Subsequently, Mrs. Stennett stated to Mr. Ashley that Mr. Carpenter was in the room in the Roosevelt lodging-house, and, at his suggestion, a note was written to Mr. Stennett to get out of town. Mr. Stennett and Mrs. Stennett stated that they had gone to Mr. Carpenter's place and had seen him; he said that he would have to see the statement that Stennett had made to the sheriff, that he was sorry that Stennett had made the statement, and finally made an appointment for the next day in his office. Then in the office Mr. Carpenter endeavored to ascertain whether the statement was sworn to, said it could not be sworn to because the sheriff could not administer an oath, and he did not need to identify Ennis as being at his place at Lodi, didn't need to identify Ennis, who was then to be tried. Mr. Stennett said that he asked Mr. Carpenter if there was any danger of perjury, and Carpenter had told him no, and that he must not be surprised if Carpenter went after him rough on cross-examination, and that he must watch Carpenter, keep his eye on him in reference to his testimony, watch his objections, and he would, maybe, get a line as to how he would answer. He said, further, that in talking to Mr. Carpenter he would go on to say that Ennis was present when Carpenter asked him who was there—repeating that Ennis was there because of the fact and that Mr. Carpenter would say, ''You must not say that, that it would convict Ennis.'' The district attorney also described the peculiar conduct of Stennett while testifying at the trial of Ennis, stating that when the witness was asked an important question, he ''would wait for you [Carpenter] to object, and he seemed to gather from your objection something in line with his answer; I could not at all times be between you and the witness, and when I got between you the witness was confused and seemed to be at sea, and I would get more answers from him in accordance with the statement he made to the sheriff,'' etc. No appellate court could say that the district attorney had no legal right to believe from the foregoing and other circumstances detailed that plaintiff was guilty of the crime of subornation of perjury, and that it was his duty to

prosecute him for said offense. The district attorney is necessarily vested with considerable discretion in such matters. If there is substantial ground for his belief, and it is so held by the trial court, the finding manifestly cannot be successfully assailed on appeal. Mr. Ashley declared as a witness that "from what had come to his knowledge as district attorney, from the statements of all these parties and from his observation of the talk and actions of Mr. Carpenter, that he did not have the shadow of a doubt that plaintiff had committed the crime of subornation of perjury." The record does not show clearly all the evidence that was presented to the grand jury or that was used on the trial, but it does appear that there was a sufficient showing to constitute the basis for "probable cause." Even if this were not so, in the condition of the record we should have to presume that the indictment and the trial were warranted—assuming that for insufficiency of the evidence therefor the district attorney could be held liable for damages in an action for malicious prosecution.

We have devoted attention to the case only as it affects the defendant, Ashley, for the reason that it is very clear from the record that there was no conspiracy shown, and the acts of the other defendants were really dependent upon and subordinate to the conduct of the district attorney, and in line with their plain duty as public officials without any malice whatever against the plaintiff.

It is hardly necessary to add that the plaintiff may have been entirely innocent of the charge against him—and we desire to intimate nothing to the contrary—but it is nevertheless true, as a matter of law, that there was probable cause for his prosecution.

In *Booraem* v. *Potter Hotel Co.*, 154 Cal. 102, [97 Pac. 65], it is said the conduct of plaintiff throughout the transaction, which was the basis for his arrest, "was that of an honorable and upright man, and there was nothing in his conduct to have excited suspicion," yet by reason of a mistake made by a Los Angeles bank in dishonoring a check, it was held that probable cause was shown for the prosecution, notwithstanding that prosecution was afterward proved to be absolutely unwarranted.

Appellant claims that "the same testimony and facts that were before the trial jury were before the grand jury, and the

only evidence before the trial jury was to the effect that plaintiff talked over the evidence with his client, and the only witness that testified to the charge was the thief and perjurer Stennett.'' But he is not borne out by his references to the transcript. No witness attempted to produce all the testimony that was heard by either body. The fault of appellant is in pointing out a portion of that testimony which is reproduced and assuming, contrary to the record, that nothing else was presented. One of the grand jurors called by plaintiff illustrates the fallacy of this position in the declaration that ''I can't call to memory the different witnesses and the different parts they took in that testimony. The testimony was proven to the satisfaction of the grand jury that you did suborn Stennett.'' He also testified that he ''remembered from the evidence that the persons who testified that Mr. Carpenter committed subornation of perjury were present and heard or saw the suborning.'' J. A. Plummer, also, who was plaintiff's attorney on the criminal charge, testified that there was a large number of witnesses at the trial who testified to many circumstances bearing upon the charge, and that he did not pretend to give all the testimony, even of Mr. or Mrs. Stennett.

Appellant is equally inaccurate in his assertion that the record shows that no effort was made to prove that Stennett swore falsely when he testified that he did not see Ennis at his place. Appellant ignores the rule imposing upon him the burden of proving the want of probable cause. Respondents could rest upon the presumption that they acted in good faith and for sufficient reason, but in addition, as we have already seen, Mr. Ashley had information which justified him in the belief that said testimony was false, and it appears, at least inferentially, that there was such evidence put before the grand and also the trial jury.

The ruling of the court was manifestly correct in sustaining an objection to the following question asked of one of the grand jurors: ''You did not intend to find any such indictment against A. H. Carpenter then?'' No citation of authorities is needed for the proposition that a grand juror cannot, in a collateral proceeding, impeach in this manner his official action in finding an indictment. Besides, it is clear that it could have no relation to the question of probable cause for the prosecution or conspiracy on the part of defendants.

Referring to the transcript of the testimony taken at his trial, plaintiff asked the said witness, J. A. Plummer, this question: "After refreshing your memory from that exhibit, can you tell now who offered Mrs. Stennett these inducements to so testify?" The objection was made that the writing itself was the best evidence of what the testimony was. The court so ruled. It is clear that the witness did not claim to know who offered said inducements, and hence the form of the question was objectionable as calling for hearsay testimony. But if it was sought to show what the testimony concerning said inducements was at the trial, it is difficult to understand why plaintiff should have objected to the writing when the witness had just stated that the writing was substantially correct.

Appellant claims that "it was error for the court to receive in evidence the alleged statement of John H. Stennett, which purported to have been made at the county jail on January 11, 1901. The witness did not see the hog thief sign the statement, and did not ask the questions, nor hear the answers thereto. He had no personal knowledge of the correctness of that statement." But Mr. Ashley had stated that he knew the signature to be that of Stennett, and that it was the statement to which he referred in his direct examination. It was evidence that Stennett at the trial of Ennis had committed perjury and was a part of the information which came to Ashley as district attorney and upon which he acted, and was clearly admissible upon the question of probable cause. "Probable cause," depending, as it does, not upon the actual state of the case, but upon the honest and reasonable belief of the party prosecuting, must necessarily be the product, in part at least, of hearsay declarations, and much of the information as to the crime and party committing it would naturally be imparted to the district attorney alone prior to the actual prosecution. Called upon to justify his course in instituting the investigation before the grand jury and in bringing plaintiff to trial on the indictment, it was entirely proper for Mr. Ashley to give the sources of his information and to relate in detail the facts of his own personal knowledge and those communicated by others in order that the court might determine whether his activity against the plaintiff rested upon an honest and reasonable belief as to guilt and was inspired by a sense of duty and right, or was the product of a

wanton and malicious purpose to injure plaintiff or to accomplish some object which he knew to be wrong and against sound public policy. (*Fox* v. *Smith,* 25 R. I. 255, [55 Atl. 698] ; 5 Words and Phrases, 4039.)

Indeed, the recital of his reasons for the prosecution was invited by the plaintiff, who asked Mr. Ashley for the sources of his information and "where and when he learned that the offense of subornation of perjury had been committed."

It was entirely proper for the court to allow the witness Ashley to answer the question: "Did you at that time say anything to Mr. Carpenter with reference to investigating his case, and if the facts coming to your knowledge justified it in your judgment as district attorney of laying it before the grand jury?" The question related to the trial of Ennis and was proper cross-examination. The witness had been asked by plaintiff if the former had not been sued by the latter for slander based upon the statements made by Ashley at the time. The purpose of the direct examination in that respect was obviously to show malice on the part of the witness. To rebut the inference and to show his good faith he clearly had the right on cross-examination to state just what was said.

The court committed no error in overruling plaintiff's objection to the question asked of Mr. Ashley on cross-examination : "Will you please state fully all the information imparted to you as district attorney upon which you acted and upon which you brought to the attention of the grand jury the charge against A. H. Carpenter of subornation of perjury?" On examination in chief a part of the information had been called for, and one informant, an alleged thief and perjurer, had been singled out and the matter left so that it might appear that this was the only warrant for the district attorney's action. The door was thereby opened for a complete revelation of the sources and extent of his information.

It was entirely proper for Mr. Ashley on cross-examination, to explain fully what occurred between him and the witness Stennett as to the promise of immunity from prosecution made by the former to the latter in order to show the good faith of the district attorney in the transaction. Besides, he substantially covered the ground in the direct examination when, in reply to the question: "Did you agree not to prosecute him for any charges of perjury and for his hog-stealing if he would

give his evidence in certain cases?" he answered: "I agreed if—on the—after the 24th of March, after consultation with Judge Budd—that I would not prosecute him for these charges of perjury provided he would tell the truth and furnish me with all the circumstances and details and corroborating matters which would show at every time the matters and things involved in their truthful light, and to the best of my knowledge he did so."

Appellant complains that the court sustained an objection to the following question asked by him of Mr. Ashley on redirect examination: "This statement that has been offered in evidence and that has been read in evidence, of Jack Stennett, was false in many particulars?" The question was objectionable on the ground that the statement had been received in evidence simply for the purpose of showing the information which came to the district attorney. It would not affect the question of probable cause if the district attorney knew at the time of the present trial that said statement was false in many particulars. As a matter of fact, however, the witness testified afterward without objection that at the time the statement was made he "was satisfied that portions of it were false and portions were true." Appellant, therefore, had the full advantage of any material inquiry as to the verity of the statement.

Plaintiff asked witness Parker, the justice of the peace, who presided at the trial of Ennis, the following question: "Now, will you state to the jury whether or not you saw me suborn the witness Stennett while the trial was going on there in your presence and in the presence of the jury and spectators?" The court properly sustained an objection that it called for a conclusion and not facts and occurrences. The witness was permitted to answer every proper question that was submitted to him.

Mr. Ashley was asked by plaintiff this question: "You have not courted an investigation in this court upon that subject, have you?"—referring to a charge that the said Ashley had attempted to secure $1,000 from Carpenter, upon condition and promise that the indictment against the latter be dismissed. The witness answered: "Because you never have put a paper in this court, in my judgment, stating facts upon which any proceeding could be had against you for your state-

ments. You state your facts in such a way it does not give the court jurisdiction, and it does not give the party any recourse against you. You put into your papers a number of allegations of such a character that they cannot be answered for their indefiniteness and there is no way to meet them.'' The answer is somewhat discursive and argumentative. It amounts no more, however, than to a negative with his reasons for not courting the investigation. Appellant claims that this and some subsequent answers were ''scandalous and libelous,'' but it may be said that, considering the character of the questions propounded, it hardly behooves appellant to complain.

Some thirty instructions, covering twenty-five pages of the transcript, were requested by plaintiff and refused. In reply to appellant's complaint, for the court's action, it would be sufficient to say that the record does not purport to contain all the instructions given. We should have to indulge, therefore, the presumption, if necessary, that the jury were fully instructed by the court. But, assuming that the full charge is contained in the transcript, it is apparent that the jury were instructed upon all questions that were necessary for their enlightenment. Finally, it may be said, in answer to all the criticism of the rulings of the court during the trial and of its action in giving and refusing instructions, that if any error was committed, the error was without prejudice, for the reason that the only conclusion warranted by the evidence is that there was probable cause for the prosecution of appellant, and furthermore, upon certain uncontradicted facts to which Mr. Ashley and others testified, the court would have been authorized to instruct the jury to render a verdict for defendants, for the reason that there was sufficient ground for said prosecution. There was some contradiction of the truth of some of the statements made to Ashley, but no contradiction of the fact that he was so informed, and there is nothing in the record to justify the conclusion that he did not act in good faith. There is no evidence in the record of any fraud on the part of the defendants or any of them. Hence, under the rule, the conviction of appellant was sufficient evidence of probable cause for his prosecution. It is stated in *Holliday* v. *Holliday,* 123 Cal. 32, [55 Pac. 703], that ''Without reviewing the cases cited, we deem it enough to say that, while there is some apparent conflict in the decisions, the prevailing rule is, that when

a person is charged before a competent court having jurisdiction of the matter, and is tried and found guilty, the judgment rendered, unless it is shown to have been obtained by means of fraud, is conclusive evidence of probable cause for making the charge, even though it is afterward held to be unauthorized and reversed on appeal. (*Crescent Livestock Co.* v. *Butchers' Union,* 120 U. S. 141, [7 Sup. Ct. Rep. 472, 30 L. Ed. 614].)'' In the latter case it is said: ''The rule is founded on deeper grounds of public policy in vindication of the dignity and authority of judicial tribunals constituted for the purpose of administering justice according to law and in order that their judgments and decrees may be invested with that force and sanctity which shall be a shield and protection to all parties and persons in privity with them.''

Again, the gravamen of the charge against defendants is that they ''did for the purpose of injuring the plaintiff in his social and business relations and of exposing him to public hatred, ridicule and contempt, wrongfully, unlawfully, maliciously and feloniously conspire, combine, confederate and agree together to falsely charge and accuse plaintiff of the crime of subornation of perjury and also to convict and punish him for the aforesaid felony and in pursuance thereof, at divers times during the aforesaid period, the above-named conspirators unlawfully procured false evidence to be given before the grand jury,'' etc.

There was no evidence worthy of the name that the defendants did conspire together for such purpose or for any purpose, nor is there any evidence that in ''pursuance'' of any conspiracy or at all they ''procured false evidence to be given before the grand jury.'' There was, therefore, an entire failure to prove the material allegations of the complaint, and the jury might properly have been so instructed.

We have examined the record with care, but we are satisfied with the conclusion of the lower court. The judgment and order are, therefore, affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 13, 1911.