[Civ. No. 8968.   Second Appellate District, Division One.—April 19, 1935.]

GENEVIEVE PEARSON et al., Respondents, v. G. E. REED et al., Defendants; CHARLES P. JOHNSON, Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and John L. Bland and Thatcher J. Kemp, Deputies City Attorney, for Appellant.

L. H. Phillips for Respondents.

SHINN, J., *pro tem.*—This is an appeal by defendant Charles P. Johnson from three separate judgments after verdict awarding plaintiffs damages for malicious prosecution.

Defendant Johnson was city prosecutor of the city of Los Angeles. Plaintiffs Genevieve Pearson, Cora Skeen and J. L. Skeen were arrested and charged in the Municipal Court of Los Angeles with the crime of petty theft. They were imprisoned for about two and one-half hours, released upon their own recognizance, tried, and found not guilty of the crime charged. They instituted this action for malicious prosecution and false arrest against defendant Johnson and others; the case was tried before a jury and they recovered damages on the cause of action for malicious prosecution. From the judgments entered on the verdicts in favor of each of the plaintiffs, defendant Johnson appeals.

A question involved, which is determinative of the case, is whether defendant Johnson is liable in a civil action for damages sustained through prosecution of a criminal action maintained by him with malice and without probable cause. The defendant, in addition to other defenses, claims immunity from such liability because the acts with which he was charged were performed in his capacity of city prosecutor, in which office it was his duty to cause criminal complaints to be filed and to conduct prosecutions for violations of city ordinances and for other misdemeanors.

Plaintiff Genevieve Pearson was the owner of an apartment house in the city of Los Angeles which was managed

for her by plaintiffs Cora Skeen and J. L. Skeen. Defendants G. E. Reed, Alice M. Reed and Lucille Reed were tenants in the apartment house and were indebted to Mrs. Pearson for rent in the sum of $205, much of which was long overdue. While the Reeds were absent from their apartment, plaintiffs Skeen, at the direction of Mrs. Pearson, removed the personal property and effects of the Reeds from their apartment into a vacant apartment and they thereafter refused to surrender the same to the owners thereof, claiming the right to hold it under a lien in the amount of the unpaid rent. The Reeds demanded possession of their property but did not pay or offer to pay the debt. The Reeds then applied to a deputy city prosecutor, one Wygant, who issued a complaint for petty theft. Plaintiffs, upon being arrested, communicated with their attorney, who in turn communicated to Johnson the fact that the complaint had been issued and the defendants in said complaint arrested. This attorney requested that Johnson cause the complaint to be dismissed, which Johnson refused to do. Johnson had known before the complaint was issued that it had been applied for and that his office had notified some or all of the persons against whom the complaint was lodged to come to his office and give their side of the story, which request had been refused. He had personally talked over the telephone with Mrs. Pearson and had invited her to come into the office to discuss the merits of the complaint. It appears further that Johnson had previously discussed the law with the same attorney, who was representing an association of apartment house owners and managers, and he had assigned the special work of handling cases dealing with the lien law in question to the deputy who subsequently issued the complaint. Johnson did not know that a complaint was to be issued, nor did he learn that it had been issued except from the attorney who communicated that fact to him. There was testimony to the effect that Johnson had discussed with the attorney for the Apartment House Owners Association the law dealing with the lien rights of apartment house operators upon the baggage and other personal effects of their tenants, and that he had been furnished with a brief of the law on the subject and had expressed the opinion that such a lien right existed.

The record contains evidence of later conversations between Johnson and the attorney and others, in which state-

ments were made by Johnson which were relied upon at the trial, and which are relied upon here, as evidence of malice toward the plaintiffs. It is not necessary to set forth the substance of these conversations. We have related sufficient facts leading up to the issuance of the criminal complaint to show that the case came to defendant Johnson in the usual routine of his office as city prosecutor. His relation to the case was that of a public officer and none other. He acted throughout in his official capacity. He had no personal interest in the questions involved and had no previous acquaintance with the accused persons.

In considering the sufficiency of the facts thus stated to charge Johnson with liability for damages for malicious prosecution, we will assume that the findings of the jury that the prosecution was malicious and without probable cause are sustained by the evidence. There is thus clearly presented the question whether a public prosecutor, acting solely in his official capacity, is liable in damages for a criminal prosecution instituted without his knowledge but maintained and carried on maliciously and without probable cause.

Principles of public policy declared and expounded by courts which have given the subject exhaustive consideration lead irresistibly to the conclusion that no such liability exists. No policy has been declared and maintained more firmly than the one which preserves the independence and freedom of action of judicial and *quasi*-judicial officers acting in official capacity. The exemption runs as to liability for damages resulting from official acts, although they be done without probable cause and with malice. There are but few cases in which the courts have been called upon to decide whether the immunity is extended to a prosecuting officer. The latter question has not been decided in California. In approaching a consideration of the question, it will be helpful to review briefly the principles underlying the rule.

In *Bradley* v. *Fisher*, 13 Wall. (80 U. S.) 335, 337 [20 L. Ed. 646, 647], Justice Field used the following language: "For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions without apprehension of personal consequence to himself. Liability to answer to every-

one who might feel himself aggrieved by the action of the judge would be inconsistent with the possession of this freedom and would destroy that independence, without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility. (*Taaffe* v. *Downes,* 3 Moore P. C. 41 n.) The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions obtains in all countries where there is any well ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries and has never been denied that we are aware of in the courts of this country. . . . The allegation of malicious or corrupt motives could always be made, and if the motives could be inquired into, judges would be subjected to the same vexatious litigation upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must in such cases resort. But for malice or corruption in their action while exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed.''

In Cooley on Torts, third edition, volume 2, page 795, the author says: ''Whenever, therefore, the State confers judicial powers upon an individual, it confers them with full immunity from private suits. In effect the State says to the officer that these duties are confided to his judgment; that he is to exercise his judgment fully, freely and without favor and he may exercise it without fear; that the duties concern individuals but they concern more especially the welfare of the State and the peace and happiness of society; that if he shall fail in the faithful discharge of them, he shall be called to account as a criminal, but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages. This is what the State, speaking by

the mouth of the common law, says to the judicial officer. The rule thus laid down applies to large classes of offices, embracing some, the powers attached to which are very extensive and others whose authority is exceedingly limited.''

In *Spaulding* v. *Vilas*, 161 U. S. 483 [16 Sup. Ct. 631, 40 L. Ed. 780], the court had under consideration an action for damages against the postmaster general, founded upon the circulation with alleged malicious motives of a false and misleading circular. In an opinion written by Justice Harlan, which reviewed the earlier American and English cases relating to judges and other officers, it was held that the immunity should be extended to the postmaster general as a defense to the charges against him. The following language was used: ''We are of opinion that the same general considerations of public policy and convenience which demand for judges of courts of superior jurisdiction immunity from civil suits for damages arising from acts done by them in the course of the performance of their judicial functions apply to a large extent to official communications made by heads of executive departments when engaged in the discharge of duties imposed upon them by law. The interests of the people require that due protection be accorded to them in respect of their official acts. As in the case of a judicial officer, we recognize a distinction between action taken by the head of a department in reference to matters' which are manifestly and palpably beyond his authority and action having more or less connection with the general matters committed by law to his control or supervision. . . . In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may at any time become the subject of inquiry in a civil suit for damages. It would seriously cripple the proper and effective administration of public affairs as entrusted to the executive branch of the government if he were subject to any such restraint. . . . In the present case, as we have found, the defendant, in issuing the circular in question, did not exceed his authority nor pass the line of his duty as postmaster general. The motive that impelled him to do that of which the plaintiff complains is therefore wholly immaterial.''

In *Downer* v. *Lent,* 6 Cal. 94 [65 Am. Dec. 489], it was held that a similar action could not be maintained against the members of the board of pilot commissioners for alleged malicious actions performed in the course of their official duties. The court held that the powers of the board members were *quasi*-judicial and that they were not answerable in a civil action for damages, and the case was disposed of with a statement reading, ''Whenever, from the necessity of the case, the law is obliged to trust to the sound judgment and discretion of an officer, public policy demands that he should be protected from any consequences of an erroneous judgment.''

Upon the reasoning of the court in *Bradley* v. *Fisher, supra,* our Supreme Court decided, in *Turpen* v. *Booth,* 56 Cal. 65 [38 Am. Rep. 48], that grand jurors are not liable in civil actions for damages, for the reason that to subject them to such liability would be against the policy of the law. It was said in that case, in approving the holding in *Downer* v. *Lent, supra,* that pilot commissioners were *quasi*-judicial officers, ''This is equally true of grand jurors. They have certain duties to perform under the law of a *quasi*-judicial character, and in the performance of such duties the law invests them with judgment and discretion. The grand jury was an essential part of the machinery of the county court. They were not volunteers but were engaged in the performance of a duty that was compulsory. In finding the indictment complained of, they acted within the legitimate sphere of their duty and cannot be held civilly responsible.''

In *Smith* v. *Parman,* 101 Kan. 115 [165 Pac. 663, L. R. A. 1917F, 698], it was held that a public prosecutor could not be sued for malicious prosecution. It was there held that a prosecutor, in deciding whether a particular prosecution should be instituted or followed up, performs much the same functions as a grand jury, and it was said, ''We think the reason for granting immunity to judges and grand jurors applies with practically equal force to a public prosecutor in his relations to actions to punish infractions of the law.''

Also, in *Griffith* v. *Slinkard,* 146 Ind. 117 [44 N. E. 1001], it was said that a prosecuting attorney is ''an officer entrusted with the administration of justice. . . . Whenever duties of a judicial nature are imposed upon a public officer,

the due execution of which depends upon his own judgment, he is exempt from all responsibility by action for the motives which influence him and the manner in which said duties are performed. If corrupt, he may be impeached or indicted, but he cannot be prosecuted by an individual to obtain redress for the wrong which may have been done. No public officer is responsible in a civil suit for a judicial determination, however erroneous it may be and however malicious the motive which produced it. . . . There is therefore no more liability against the prosecuting attorney than there is against the grand jury for the return of an indictment maliciously and without probable cause."

In *Yaselli* v. *Goff*, 12 Fed. (2d) 396 [56 A. L. R. 1239] (affirmed in 275 U. S. 503 [48 Sup. Ct. 155, 72 L. Ed. 395]), the question of liability of an assistant United States attorney for malicious prosecution was presented to the United States Circuit Court of Appeals of the Second Circuit. The cases we have referred to, and many others, were considered by that court, and it was held, "A United States Attorney, if not a judicial officer, is at least a *quasi*-judicial officer of the government. He exercises important judicial functions and is engaged in the enforcement of the law. The reasons for granting immunity to judges, jurors, attorneys, and executive officers of the government apply to a public prosecutor in the performance of the duties which rest upon him. . . . In our opinion, the law requires us to hold that a special assistant to the Attorney General of the United States, in the performance of the duties imposed upon him by law, is immune from a civil action for malicious prosecution based on an indictment and prosecution, although it results in a verdict of not guilty rendered by a jury. The immunity is absolute and is grounded on principles of public policy. The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the government should speak and act freely and fearlessly in the discharge of their important official functions. They should be no more liable to private suits for what they say and do in the discharge of their duties than are the judges and jurors, to say nothing of the witnesses who testify in a case." In applying the doctrine thus announced, the court held that a case was not stated

against the defendant, although it was alleged not only that he prosecuted the criminal action maliciously and without probable cause, but that he also maliciously procured his appointment as assistant United States attorney in order to enable him so to do. These facts, the court held, did not relax or avoid the doctrine of immunity.

The Supreme Court of Oregon, in *Watts* v. *Gerking*, 111 Or. 641 [222 Pac. 318, 228 Pac. 135, 34 A. L. R. 1489], upheld a judgment sustaining a demurrer and dismissing an action for malicious prosecution against a district attorney charged with instituting and prosecuting a criminal charge without probable cause and with malice. The decision quoted was upon rehearing and the court recalled and set aside its former decision which had held the other way. The question was very carefully considered and, like the other authorities we have cited, is quite persuasive. A statement in the opinion which is appropriate reads: "In reaching a decision we are confronted with a determination that concerns public policy. We are face to face with a a law-enforcing problem. Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it in execution."

As will be seen from reading the foregoing cases, there are many authorities which support the general principles of public policy that are involved in actions of this nature against public officials. But we think further citation is unnecessary. The duties of a prosecuting officer are such as to clearly bring him within the class of public servants who by their official acts incur no civil liability.

In the case of *Leong Yau* v. *Carden*, 23 Haw. 362, the court reached a different conclusion. It was there held that a public prosecuting officer, in determining whether the prosecution should be instituted, acts in a *quasi*-judicial capacity; that he is not to be held liable in damages for an honest mistake or error in judgment, but is to be held liable if he prosecutes without probable cause and with malice. This case and the authorities therein relied upon were discussed in *Yaselli* v. *Goff* and *Watts* v. *Gerking, supra,* and found to be unsupportable in a case where a prosecuting officer is accused on account of acts done in his official capacity.

In *Carpenter* v. *Sibley*, 153 Cal. 215 [94 Pac. 879, 126 Am. St. Rep. 77, 15 Ann. Cas. 484, 15 L. R. A. (N. S.) 1143], the court upheld the sufficiency of a complaint charging the district attorney, his assistant and the sheriff with malicious prosecution. The same case was before the District Court of Appeal in 15 Cal. App. 589 [119 Pac. 391], where a judgment in favor of the defendants was affirmed. The question of immunity of the defendants was not raised or decided in either case and they are therefore not authority on the point. It is conceivable that the defendants may have chosen to go to trial on the merits without relying upon the special defense.

While cases involving prosecuting officers have rarely been before the courts, they have been sufficient in number and have received such thoughtful consideration as to firmly establish a rule of public policy which bars such actions as the present one. The appellant Johnson at no time acted in any private capacity. Charges were laid before his deputy in a regular manner; a complaint was issued and the action was prosecuted as any other case would be. No step was taken by the defendant in excess of his authority. Whatever may have been his actuating motive, his acts were those of a public official and not a private citizen.

A prosecutor is called upon to determine, upon evidence submitted to him, whether a criminal offense has been committed by the person accused—exactly the same question that is presented to a court or jury upon trial. His decision is no less judicial in character if it be erroneous or swayed by prejudice or malice. It does not matter whether the evidence before him be much or little or whether he hears all or only some of it. His authority to investigate the facts before acting is unlimited and the matter rests in his own discretion. He is a *quasi*-judicial officer and he is also an executive officer. It was decided in *Singh* v. *Superior Court*, 44 Cal. App. 64 [185 Pac. 985], that a district attorney is an executive, as distinguished from a judicial officer within the meaning of section 67 of the Penal Code, which declares it to be a felony to offer a bribe to an executive officer of the state. The court did not have before it the question we are discussing and decided nothing with which we are not in accord. It is the nature of the duty performed that deter-

mines whether it is a judicial act—not the name or classification of the officer who performs it, and many who are properly classified as executive officers are invested with limited judicial powers. In *Smith* v. *Strother*, 68 Cal. 194 [8 Pac. 852], quoting from *Central P. R. R. Co.* v. *Gallatin*, 99 U. S. 727 [25 L. Ed. 504, 516], it was said: "Whenever an act undertakes to determine a question of right or obligation or of property as the foundation on which it proceeds, such act is to that extent a judicial one and not the proper exercise of legislative functions." Another definition is found in *Rigdon* v. *Common Council*, 30 Cal. App. 107 [157 Pac. 513], reading, "Primarily, of course, a City Council, Board of Supervisors, or like body exercises ministerial and legislative functions. Quite generally and almost invariably added to these duties is the requirement that judicial or *quasi*-judicial functions shall be called into exercise and generally it may be said that wherever discretionary judgment depends for its guidance upon evidence to be heard, that judgment will be judicial in its nature." They are *quasi*-judicial officers and bodies and their acts may be either judicial or they may be something else; it all depends upon the duties concerning which the question arises.

The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. There would be involved in every case the possible consequences of a failure to obtain a conviction. There would always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case. Not only would the prosecutor himself be subjected to groundless suits, but his deputies likewise would be accused. The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded and we would have moved away from the desired objective of stricter and fairer law enforcement. We are well aware of the fact that in thus shielding the public prosecutor

against actions of this sort the rule may work hardship and injustice in individual cases. But there is no middle ground to be occupied in the matter; either all such suits are to be tolerated or none. We are confronted with the not unusual situation that calls for the subordination of the rights of the few to the interests of the whole body of the public. The doctrine of immunity is not for the benefit of the few who might otherwise be compelled 'to respond in damages. It is for the benefit of all to whom it applies, that they may be free to act in the exercise of honest judgment, uninfluenced by fear of consequences personal to themselves. This again is not for their personal advantage or benefit. It is only that they may be enabled to render a better public service.

Under the conclusions which we have reached, and which we are satisfied are in accord with the best considered cases and with sound public policy, the defendant and appellant Johnson, upon the facts shown in the record which are most favorable to the respondents, cannot be held to be under any civil liability to plaintiffs and respondents, and the several judgments against him in favor of the respondents should be reversed. Inasmuch as the action cannot be maintained under the allegations of the several causes of action of the complaint, the case should be dismissed.

Other points are urged by the appellant, who earnestly insists that the evidence was insufficient to support the findings that he acted maliciously, and alleged errors in the admission of evidence are also relied upon. As the case will not be retried, it is unnecessary to decide these points.

The judgments in favor of the several plaintiffs, Genevieve Pearson, Cora Skeen and J. L. Skeen, against Charles P. Johnson are reversed and the lower court is directed to dismiss the action as to said defendant.

Houser, Acting P. J., and York, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 18, 1935.

Curtis, J., voted for a hearing.