Filed 10/25/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | E079389, E079543 |
| Plaintiff and Respondent, | (Super.Ct.Nos. RIF1902599, BAF2101138) |
| v. | |
| PAUL HOWARD HUPP, | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Alexander R. Martinez, Judge.  Reversed with directions.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Paul Hupp of four counts of violating Penal Code section 69 based on threatening statements he made to four judges. (Unlabeled statutory citations refer to the Penal Code.) On appeal, Hupp raises an issue of first impression: Is a judge an "executive officer" within the meaning of section 69, which makes it a crime to attempt to deter, by means of any threat, an executive officer from the performance of a legal duty? We conclude that the answer is no. In this context, "executive officer" unambiguously refers to an officer of the executive branch, and judges are not part of the executive branch. We therefore agree with Hupp that his convictions must be reversed.

BACKGROUND

A.    *The Incidents*

In February 2018, Hupp left multiple messages on a federal magistrate judge's courtroom answering machine in which he threatened to show up at the judge's house if the judge did not promptly schedule a status conference. Hupp also sent a letter to the judge's home address, threatening to have the conference on the judge's "front doorstep."

Several months later, Hupp filed a vexatious litigant request to initiate new litigation in Riverside County Superior Court. He addressed the request to two Riverside County trial judges, called the judges derogatory names, listed their home addresses, and threatened to show up at their houses if they failed to rule on his request in a timely

2

manner.  A few months after that, he filed a motion to disqualify a different Riverside County trial judge in a different matter.  In that motion, Hupp called the judge derogatory names and said that if the judge ever harmed his family, it would be "the mistake of [the judge's] motherfucking life" because "[t]here will not be a rock on the face of this earth that this little bitch will be able to hide under."

B.      *Procedural Background*

The People initially filed a complaint charging Hupp with one count of threatening a judge in violation of section 76 based on the statements he made to the federal magistrate judge.  The complaint also alleged that Hupp had suffered a prior strike conviction in 2013. (§§ 667, subds. (c), (e)(1), 1170.12.)  Several months later, the People filed an amended complaint that added one count of attempting to deter an executive officer in violation of section 69 based on the statements in Hupp's motion to disqualify the Riverside County trial judge.

At the preliminary hearing, the trial court held Hupp to answer on the section 69 charge but dismissed the section 76 charge for insufficient evidence because Hupp's statements to the federal magistrate judge did not threaten "death or serious bodily injury," which the statute requires.  Following that dismissal, the People filed an information charging Hupp with four counts of violating section 69.

During a pretrial hearing on motions in limine, the trial court questioned whether a judge qualifies as an "executive officer" under section 69 and asked the parties if they were aware of any published decisions addressing the issue.  The prosecutor said he was

3

not aware of any such decisions but argued that judges fall within the definition of "executive officer" in CALCRIM No. 2651, which defines the term broadly as "a government official who may use his or her own discretion in performing his or her job duties." The court asked why the People were not trying Hupp under section 76, which was "more specific to the[] charges," and the prosecutor responded that "based on the evidence we have, it doesn't quite reach the level of a 76."

After additional discussion, the court decided not to dismiss the charges, because the jury instruction was "broad enough to encompass judicial officers." The court noted, however, that the charges presented a "[m]onumental issue" of first impression "that will obliterate the case on appeal if the Court says judges don't apply."

The matter proceeded to trial, and the jury found Hupp guilty as charged. In a separate proceeding, the trial court found the prior strike allegation true. As the last-in-time sentencing court, the trial court imposed a total consolidated sentence of 10 years for the crimes in this case and for other crimes that Hupp was convicted of in Riverside County several months earlier.[1] (§§ 669, 1170.1, subd. (a).)

## DISCUSSION

Section 69 provides that "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law . . . is punishable by a fine not exceeding ten thousand dollars

---

[1] In the Riverside County case, Hupp was convicted of one count of criminal threats, one count of attempted criminal threats, and one count of elder abuse. (§§ 422, 664, 368, subd. (b)(1).) That judgment is the subject of a separate appeal in case No. E078421.

4

($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." (§ 69, subd. (a).) Hupp argues that as a matter of law he is not liable under that provision, because a judge is not an "executive officer" within the plain meaning of the term. We agree.

Our task when interpreting statutory language is to discern the Legislature's intent "so as to effectuate the purpose of the law." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387.) "The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

Depending on context, the ordinary meaning of the term "executive officer" is either an officer of the executive branch of government or a person occupying a leadership role in a business organization. (See *People v. Buice* (1964) 230 Cal.App.2d 324, 336 [noting the dual meaning of "executive officer"].) Given that section 69 is located in title 5 of part 1 of the Penal Code, which is entitled, "Of Crimes By and Against the Executive Power of the State," the governmental meaning applies in this case.

In the government context, "executive" has a specific and well-established meaning. As an adjective, it conveys that the noun it modifies relates to or is part of the executive—that is, the branch of government responsible for enforcing laws. (Merriam-

5

Webster Online Dict. <http://www.merriam-webster.com/dictionary/executive> [as of October 24, 2023].) Moreover, our state constitution recognizes and has always recognized the separation of legislative, executive, and judicial powers. (Cal. Const., art. III, § 3; *People ex rel. McCauley & Tevis v. Brooks* (1860) 16 Cal. 11, 39 ["'The powers of the government of the State of California shall be divided into three separate departments—the legislative, the executive and judicial'"].) That separation was well understood when section 69 was enacted in 1872 as part of the original Penal Code. (See Webster's Dictionary of 1828, <https://webstersdictionary1828.com/executive> ["in government, *executive* is used in distinction from legislative and judicial" to refer to "the body or person who carries the laws into effect, or superintends the enforcement of them"].) Under the plain meaning of the term "executive" in the government context, judges are not executive officers; they are judicial officers. (*People v. Arias* (2008) 45 Cal.4th 169, 177 ["[t]he statute's plain meaning controls the court's interpretation"].) We therefore conclude that a judge does not qualify as an "executive officer" as the term is used in section 69.

The People's arguments to the contrary are not persuasive. First, they argue that although the vast majority of section 69 cases involve peace officers, courts have interpreted the term "executive officer" broadly to include "other types of officers." The People are correct that the term "executive officer" covers other executive officers besides peace officers, but they provide no authority for the proposition that the term extends to officers outside the executive branch. (See *In re Manuel G.* (1997) 16 Cal.4th

6

805, 818-819 [concluding that "executive officer" as used in section 69 is "not limited to *peace* officers . . . , but extends to other executive officers"].)

Second, the People argue that because section 69 is located in title 5 of part 1 of the Penal Code, which concerns "Crimes By and Against the Executive Power of the State," and title 5 contains some provisions that apply to judges, it follows that judges must be part of the executive. For example, section 76 is in title 5 and prohibits threats of death or serious bodily harm directed at "any elected public official, county public defender, . . . judge," or various other individuals, including "Member[s] of the Legislature." (§ 76, subds. (a), (b).) In addition, section 71 is in title 5 and criminalizes certain threats directed toward "any [public] officer or employee." (See § 71, subd. (a).) According to the People, if the Legislature did not consider judges to be executive officers, then it would not have included judges within the protections of any of title 5's provisions.

We are not persuaded. If the People's argument were sound, then all of the individuals protected by sections 71 and 76 would qualify as executive officers (or at least executive employees), including public defenders and "Member[s] of the Legislature." (See § 76, subds. (a), (b).) That is not plausible. Rather, a more reasonable interpretation is that the Legislature intended for sections 71 and 76 to apply to individuals outside the executive branch even though those provisions are codified in title 5. Sections 71 and 76 protect a broad range of public employees in multiple branches of government, plus some employees, like public defenders, who might not fit neatly into

7

any of the three branches.  (Joe, *Structuring the Public Defender* (2020) 106 Iowa L.Rev. 113, 126-127 & fn. 65.)  The Legislature had to codify those general provisions somewhere.  Otherwise, the Legislature would have had to split up those protections into multiple, parallel provisions, one for each branch (title 5 concerns "the Executive Power of the State," title 6 concerns "the Legislative Power," and title 7 concerns "Public Justice"), and then it would still have had to figure out where to put public defenders. The Legislature's decision to draft sections 71 and 76 broadly to encompass public employees across multiple branches and then place those broad provisions in title 5 does not mean that everyone protected by them—including members of the Legislature—is an executive officer or otherwise within the executive branch.  The People's argument therefore fails.

Third, the People point to section 77, which states that "[t]he various provisions of [title 5], except Section 76, apply to administrative and ministerial officers, in the same manner as if they were mentioned therein."  The People argue section 77 shows "that section 69 does not apply exclusively to executive officers despite its limited language, but is meant to be broad and expansive in its reach."  But the People cite no authority for the proposition that judges are administrative or ministerial officers, which they clearly are not.  (See Black's Law Dict. (11th ed. 2004) p. 1308, cols. 1 & 2 [a "ministerial officer" is "an officer who primarily executes mandates issued by the officer's superiors," and an "administrative officer" is "[a] ministerial or executive officer, *as distinguished from a judicial officer*"], italics added.)

8

Fourth, the People assert that if prosecutors can be considered quasi-judicial officers for purposes of the judicial immunity doctrine, then "the same logic must be extended to[] judges" for purposes of liability under section 69. We disagree. The judicial immunity doctrine shields judges from civil liability arising from their official acts. Courts have extended the immunity to prosecutors, who are part of the executive branch, because prosecutors often engage in the type of judicial activities that the immunity was designed to protect (e.g., interpreting laws and applying them to evidence). (See, e.g., *Pearson v. Reed* (1935) 6 Cal.App.2d 277, 286-287 [application of the doctrine depends on "the nature of the duty performed . . . and many who are properly classified as executive officers are invested with limited judicial powers"].) But the reverse is not true for judges, and the People do not identify any judicial duties that are executive in nature. Moreover, even if there were such a judicial duty, the People's argument would still fail. The issue presented in this case is one of statutory interpretation, not whether public policy supports treating judges as executive officers for purposes of a common law doctrine.

Finally, the People argue that CALCRIM No. 2651, the pattern jury instruction for section 69 "suggests that the definition of 'executive officer' is meant to be broad." They point out that the instruction defines an "executive officer" as "a government official who may use his or her own discretion in performing his or her job duties," and under that definition, a judge qualifies as an executive officer. We are not persuaded. The fact that CALCRIM No. 2651's definition of "executive officer" appears to be far broader than the

9

plain meaning of the term does not mean that we should stretch our interpretation of the statute to fit the instruction. Rather, it suggests that the instruction may need to be revised to convey that the term is limited to the executive branch. (See *People v. Harper* (2020) 44 Cal.App.5th 172, 192 [concluding that a pattern jury instruction misstated the law and suggesting that it be revised].)

Because a judge is not an "executive officer" within the meaning of section 69, as a matter of law Hupp is not liable under that provision, and his convictions must be reversed. Our conclusion makes it unnecessary to address the remainder of his arguments on appeal.

DISPOSITION

The convictions on counts 1 through 4 are reversed, Hupp's consolidated sentence is vacated, and the matter is remanded for further proceedings consistent with this opinion.

CERTIFIED FOR PUBLICATION

MENETREZ
                                                                    J.

We concur:

MILLER
        Acting P. J.

RAPHAEL
                J.

10